**T. Earl HINTON et al.**

v.

**James THREET et al.**

**Civ. A. No. 4565.**

United States District Court
M. D. Tennessee,
Nashville Division.

Feb. 23, 1968.

Henry Denmark Bell, Nashville, Tenn., for plaintiffs.

William T. Sellers, Murfreesboro, Tenn., for defendants.

## OPINION

WILLIAM E. MILLER, Chief Judge.

This is an action for a declaratory judgment that the Quarterly County Court of Rutherford County, Tennessee,

as presently constituted, is so malapportioned as to violate the equal protection clause of the Fourteenth Amendment to the Federal Constitution. Injunctive relief is also sought directing the defendants to put into effect a redistricting plan enacted by the 1967 Tennessee General Assembly. Plaintiffs in this cause are citizens and registered voters of the 13th Civil District of Rutherford County, Tennessee. Defendant James Threet is County Judge and Chairman of the Rutherford County Quarterly Court. Other defendants are the justices or members of the Quarterly County Court.

The Quarterly Court of Rutherford County, under various statutory provisions, has been given the power to levy taxes, fix the rate of taxation, borrow money, issue bonds, determine the county budget, and appropriate money for school and highway construction and other county purposes. Also, under Tennessee Code § 5-111 the General Assembly has given the Quarterly County Courts authority to redistrict themselves, and under the 1953 Home Rule Amendment to Article 11, § 9 of the Tennessee Constitution, any private act of the General Assembly affecting a particular county must, to become effective, be ratified either by a two-thirds vote of the Quarterly County Court or by a majority of those voting in an election to be held in said county. This amendment substantially reduced the unilateral power formerly held by the General Assembly over local affairs of the counties.

The framework for the districting of Quarterly County Courts is set forth in the Tennessee Constitution, Article 6, § 15:

The different Counties of this State shall be laid off, as the General Assembly may direct, into districts of convenient size, so that the whole number in each County shall not be more than twenty-five * * *. There shall be two Justices of the Peace * * * elected in each district by the qualified voters therein, except districts including County towns, which shall elect three Justices * * *. The Legislature shall have power to provide for the appointment of an additional number of Justices of the Peace in incorporated towns.

Pursuant to these constitutional provisions, the General Assembly has enacted the following statutory provisions:

Tenn. Code § 19-101—For every incorporated town, one (1) justice is to be elected by the qualified voters therein.

Tenn. Code § 19-102—For each district of every county, except those districts including county or incorporated towns, two (2) justices of the peace shall be elected by the qualified voters therein.

Tenn. Code § 19-103—For every other district in the state which includes a county town, three (3) justices of the peace may be elected by the qualified voters therein.

The Tennessee General Assembly, apparently by private act,[1] has divided Rutherford County into twenty-five civil districts which elect two justices of the peace each. The 13th Civil District embraces the City of Murfreesboro and elects two additional justices, one because Murfreesboro is an incorporated town and the other because Murfreesboro is the county seat. The 13th Civil District thus has a total of four justices of the peace. The 3d and 8th Civil Districts embrace the incorporated towns of Smyrna and Eagleville respectively, and each, therefore, elects an additional justice, giving those districts a total of three justices each. The total number of justices composing the Rutherford County Quarterly Court and carrying out the functions enumerated above is fifty-four. The representation on the Quarterly Court varies from one justice for every

---

1. However, the act or acts creating the present districting are not cited by either party. It is alleged that there has been no major change in the apportionment of justices of the peace since the county was formed in 1803.

2,483 registered voters for the 13th Civil District to one justice for every forty-nine registered voters for the 2d Civil District.[2] Expressed differently, the 13th Civil District with 46.7 per cent of the registered voter population has a representation of 7.4 per cent on the Quarterly County Court.

The plaintiffs first filed their complaint with the Court on October 14, 1966, setting forth the facts stated above and alleging that they as registered voters in the 13th Civil District are being deprived of equal protection of the law. The plaintiffs contend that the voting strength of persons in the less populated civil districts is arbitrarily exalted and that the plan of civil districting is invidiously discriminatory to them and other voters in the more populous civil districts. Plaintiffs further assert that a fair and constitutional plan of redistricting has been prepared by a committee appointed by defendants for that purpose but that the defendants have refused to put this plan into effect. The plaintiffs insist that there is no hope of the Quarterly County Court itself taking any action which would remedy the existing inequities.

The defendants by their answer admit that the malapportionment exists but assert that they do desire to correct the situation. Because the defendants had by resolution requested the Tennessee General Assembly to use the recommendations of defendants' committee and provide a plan of redistricting on the "one man, one vote" basis, the defendants asked that no injunctive relief be ordered. In compliance with this request, the Court by order entered March 2, 1966, deferred action until the 1967 Tennessee General Assembly had had an opportunity to enact a constitutional plan of redistricting.

During its 1967 session the General Assembly enacted Chapter 113 of the 1967 Private Acts of Tennessee providing for the redistricting of the Rutherford County Quarterly Court. Pursuant to the Home Rule Amendment to the Tennessee Constitution, Chapter 113 provides, however, that it shall have no effect unless approved by a two-thirds vote of the Rutherford County Quarterly Court. Chapter 113 further provides that upon approval by the Quarterly County Court the Election Commission shall call an election within ninety days for the purpose of electing justices on the basis of the new plan.

At its regular session in July, 1967, the Quarterly County Court deferred action on Chapter 113. In October it refused for a second time to take action on the redistricting act. Consequently, on October 18, 1967, the plaintiffs entered a motion for summary judgment as provided for by Federal Rule of Civil Procedure 56. The plaintiffs contend that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. Plaintiffs ask for an injunction directing the defendants to put into effect the redistricting plan contained in Chapter 113.

Plaintiffs' motion was heard before the Court on October 30, 1967, at which time defendants once again represented to the Court that they did intend to correct the existing malapportionment and that they would take action to effectuate the statutory plan of Chapter 113. Because of the situation with regard to school board redistricting in Rutherford County, the defendants asserted that this action would be taken on or before December 31, 1967.

On December 7, 1967, plaintiffs submitted a supplemental affidavit to the Court stating that on December 4, 1967, the defendants called a special session of the Rutherford County Quarterly Court for the purpose, among other things, of considering Chapter 113. At this special session the Quarterly County Court rejected the proposed redistricting

---

**2.** The Appendix to this opinion sets forth for each district under the present scheme of districting the number of registered voters, the number of justices of the peace, and the number of registered voters per justice of the peace.

act by a vote of thirty to twenty. Nothing further has been brought to the attention of the Court to indicate that the defendants effectuated a plan of redistricting within the time represented to the Court, or that they have done so since.[3]

The first question to be considered is whether a single judge or a three-judge district court is the proper tribunal to render a decision in this case.[4] Defendants assert that 28 U.S.C.A. § 2281 requires the convening of a three-judge court.

■ For a three-judge court to be convened a state statute or administrative order must be challenged, a state officer must be a party defendant, injunctive relief must be sought, and it must be claimed that the statute is contrary to the Federal Constitution. 28 U.S.C.A. § 2281. If all four of these prerequisites are present, then a three-judge panel is required and a single district judge does not have jurisdiction to decide the case on the merits. Stratton v. St. Louis S.W. Ry., 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135 (1930). If any one of the four prerequisites is not present, then a three-judge court is not required and the case is to be disposed of by a single district judge.

In determining whether a state statute is being challenged, Supreme Court decisions have consistently held that the statute must be of general and statewide application before it is necessary to convene a three-judge court. This rule was first enunciated in Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990 (1928), where the plaintiff sought to enjoin a city from proceeding under a municipal resolution that directed the paving of a particular street. The plaintiff asserted that the state statute which authorized such action was unconstitutional. The Court held that although the constitutionality of a state statute was challenged, the suit involved only matters of interest to a particular municipality and that, therefore, it was not necessary that a three-judge court be convened. This rule has also been applied in a case where the state statute extended only to one drainage district. Rorick v. Bd. of Comm'rs., 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242 (1939). And in Griffin v. School Board, 377 U.S. 218, (1964), a state statute on its face applied to all school districts within the State of Virginia and any court decision was likely to have repercussions throughout the state. Nevertheless, the Supreme Court ruled that the statute actually dealt with a situation unique to one

3. Chapter 113 divides Rutherford County into twenty-one civil districts, describing their respective boundaries. Plaintiffs assert in support of their motion for summary judgment that the plan of districting in Chapter 113 is fair and constitutional. Chapter 113 was enacted following a resolution of the Quarterly County Court requesting the General Assembly to pass "all legislation necessary to reapportion the Quarterly Court of Rutherford County on the basis of one man one vote, using the recommendations of the committee heretofore received by the court as a basis for such legislation." As a result of this resolution, the General Assembly enacted Chapter 113 districting Rutherford County in substantially the same manner as the Quarterly County Court's committee proposal. It may fairly be said, therefore, that the Quarterly County Court has clearly indi-

cated its position that the plan of districting contained in Chapter 113 is a fair and acceptable method of districting Rutherford County in compliance with the "one man, one vote" principle. There is no reason on the present record to ascribe the Quarterly County Court's subsequent rejection of Chapter 113 on December 4, 1967, to a belief on its part that the legislative plan is basically unfair or not in substantial compliance with constitutional requirements. The Court thus accepts as valid and constitutional the legislative plan of districting. Also, the Court assumes that the description of districts is accurate, no contention having been made to the contrary.

4. In a recent opinion this Court entered into a lengthy discussion of the three-judge court question. Liveright v. Joint Committee, 279 F.Supp. 191 (M.D.Tenn. 1968).

county and was a proper case for single judge treatment.

 Two recent Supreme Court cases have applied this general rule and seem to refute conclusively the defendants' contention that a three-judge court must be convened in this case. In Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967), two cases were consolidated on appeal. One group of plaintiffs attacked the validity of an Alabama statute prescribing the districting scheme for electing members of the Houston County Board of Revenue and Control. A second group of plaintiffs challenged the appointment of members of the Suffolk County (New York) Board of Supervisors. The Court stated that it had consistently construed 28 U.S.C.A. § 2281 "as authorizing a three-judge court not merely because a state statute is involved but only when a state statute of general and statewide application is sought to be enjoined." In Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967), electors of five Virginia boroughs instituted suit against local and state officers claiming that a consolidation plan of the City of Virginia Beach and Princess Anne County under which a borough form of government was adopted violated the "one man, one vote" principle by its distribution of voting rights under the plan. The consolidation plan was adopted pursuant to Virginia law and the charter embodied in the plan was approved by the legislature. The Court held that the case was not one for a three-judge court, the charter being local only and not of statewide application.

The factual situation in the instant case is analogous to that of *Dusch*. The plaintiffs in this case are contending that the particular plan of districting in effect in Rutherford County is unconstitutional. The plaintiffs do not contend, as the defendants assert, that any of the general state statutes are in any way invalid. It is rather the plaintiffs' contention that the local act or local application of these statutes is unconstitutional. As in the *Dusch* case, it is the particular local plan and not the general

statutory scheme, pursuant to which the local plan has been effected, that is allegedly invalid. The unconstitutionality which the plaintiffs allege relates solely to the affairs of one county in the state. The action was brought by the plaintiffs to restrain local officers acting solely with reference to local matters. There is no alleged unconstitutionality of a state statute of general and statewide application.

The situation in this case differs from the two cases recently heard and decided together in this district by a three-judge panel involving the malapportionment of two other Quarterly County Courts in Tennessee. Hyden v. Baker, (M.D.Tenn. 1968). The plaintiffs in both of those actions, unlike the instant case, attacked the constitutional validity of local statutes, general statewide statutes, and a provision of the Tennesse Constitution. Because of the plaintiffs' attack in their complaint on statutes and a constitutional provision of statewide application, those actions were proper ones for determination by a three-judge panel.

In *Moody* the defendants made the same argument that the defendants make here; that is, that the alleged malapportionment reflected in the local act is also reflected in the general statewide statutes and that to get rid of the alleged malapportionment the Court would have to declare unconstitutional not only the local statute but also the general statewide statutes. The Supreme Court rejected this argument by stating that the complaint challenged only the local statute and made no challenge to any statewide law and that the district court could consider it as an attack only on the local statute.

The Supreme Court has also held that whether a three-judge court has jurisdiction is largely within the control of the plaintiff in drawing his complaint. A defendant may not raise the constitutional issue by answer and thereby obtain a three-judge court. Ex parte Hobbs, 280 U.S. 168, 50 S.Ct. 83, 74 L.Ed. 353 (1929). For purposes of the jurisdic-

tional question, the court takes the complaint as it finds it. Moody v. Flowers, supra. The Court concludes that on the face of the complaint in this case there is only an alleged malapportionment under a private act relating to one county and that, therefore, it is not necessary that a three-judge court be convened.

 Since this case involves only a local statute or the local application of general statutes, the state attorney general is not a necessary party defendant. The defendants' argument that the Court cannot grant the injunction sought by the plaintiffs because only a three-judge panel could do so must be rejected for the additional reason that a state officer is not made a defendant. Moody v. Flowers, supra; Ex parte Collins, supra.

 Since the defendants in this action have admitted the existence of the alleged malapportionment, the Court is of the opinion that there is no genuine issue as to any material fact and that the action may properly be disposed of on plaintiffs' motion for summary judgment. Fed.R.Civ.P. 56(c).

The basic issue before the Court is whether the equal protection clause of the Fourteenth Amendment requires representation on the Rutherford County Quarterly Court in conformity with the "one man, one vote" standard set forth by the Supreme Court in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 13 L.Ed.2d 76 (1964). It was there held that seats in a state legislature must be apportioned on a population basis. The Court stated that it was a violation of equal protection of the law to dilute a citizen's vote through malapportionment. There was no definitive statement in *Reynolds* as to whether the "one man, one vote" principle extends to local governmental bodies. Nor does a review of companion cases provide the answer. Lucas v. Forty-fourth General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 144, 12 L.Ed.2d 620 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Maryland Comm. v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); W.M.C.A. Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964).

The Supreme Court's most recent confrontation with the problem occurred in Moody v. Flowers, supra, Sailors v. State Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), and Dusch v. Davis, supra. In these cases the Court left an explicit answer to the question still in doubt. In *Moody* the Court vacated and remanded the case because a three-judge tribunal had been improperly convened. In *Sailors* the plaintiffs challenged the constitutionality of a Michigan statute providing for the composition of county school boards. Under that statute the people elected members of local school boards and the local boards, in turn, selected delegates to attend the meeting at which the county school board was elected. Membership on the county school board was thus not determined by an election in which residents of the county participated. The Supreme Court held that this system for selecting members of the county school board was basically appointive rather than elective. Since no election was involved and since none was required for these nonlegislative offices, the principle of "one man, one vote" had no relevancy. The Court assumed arguendo that where a state provides for an election of a local official the "one man, one vote" standard must be met but held that this question was not then before the Court. In *Dusch* the Supreme Court once again assumed arguendo that the "one man, one vote" rule applied to the apportionment of municipal or county agencies but held that upon the facts of that case there was no showing of invidious discrimination which, in any event, must be present in order to invoke the *Reynolds* standard.

Many other courts have dealt specifically with this question which the Supreme Court assumed arguendo in *Sailors* and *Dusch* but did not decide. In Strickland v. Burns, 256 F.Supp. 824 (M.D.Tenn.1966), a case arising in this district, the Court held that the apportion-

ment provisions of a Tennessee Private Act apportioning members of a county school commission constituted invidious discrimination contrary to the "one man, one vote" standard and that the act was, therefore, void as violative of the equal protection clause of the Fourteenth Amendment. In reaching this result Judge Gray stated for the majority that the Court could "find no basis for applying the 'one man, one vote' rule to the congeries of powers possessed by the Legislature and at the same time denying its application to a subordinate body simply because it possesses a fractional part of those powers * * *." Strickland v. Burns, supra at 827.

A similar result was reached by the majority of the same three-judge panel in two cases recently heard and decided together involving Quarterly County Courts. Hyden v. Baker, supra. There Judge Gray, speaking for the majority, stated:

> The core of the Reynolds decision * * is that any state legislative apportionment scheme resulting in a dilution of the efficacy of votes based on the residence of the voters constitutes invidious discrimination in violation of the Equal Protection Clause. When this rationale is considered in light of prior decisions holding that political subdivisions of the states are subject to the mandate of the Equal Protection Clause, it is illogical to conclude that local elective bodies, such as quarterly county courts, are not encompassed within the constitutional doctrines established in Reynolds and related cases.

A substantial majority of the courts considering this question have arrived at the same conclusion. The rule has been applied to another local school board, Delozier v. Tyrone Area School Board, 247 F.Supp. 30 (W.D.Pa.1965); to county boards of supervisors, Lynch v. Torquato, 343 F.2d 370 (3d Cir. 1965) (dictum), Bianchi v. Board of Supervisors, 256 F.Supp. 617 (E.D.N.Y.1966), vacated and remanded sub nom. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967) (because a three-

judge court had been improperly convened), Bianchi v. Griffing, 238 F.Supp. 997 (E.D.N.Y.1965), appeal dismissed 382 U.S. 15, 86 S.Ct. 52, 15 L.Ed.2d 11 (1965), Miller v. Board of Supervisors, 63 Cal.2d 343, 46 Cal.Rptr. 617, 405 P.2d 857 (1965) (applying state statute requiring equal population districting), Hanlon v. Towey, 274 Minn. 187, 142 N. W.2d 741 (1966), Mauk v. Hoffman, 87 N.J.Super. 276, 209 A.2d 150 (1965), Augostini v. Lasky, 46 Misc.2d 1058, 262 N.Y.S.2d 594 (N.Y.Sup.Ct.1965), Bailey v. Jones, 81 S.D. 617, 139 N.W.2d 385 (1966), State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249 (1965); to city councils, Ellis v. Mayor and City Council of Baltimore, 352 F.2d 123 (4th Cir. 1965), Seaman v. Fedourich, 16 N.Y.2d 94, 262 N.Y.S.2d 444, 209 N.E.2d 778 (N.Y.1965); and to a state constitutional convention, State ex rel. Smith v. Gore, 143 S.E.2d 791 (W.Va. 1965).

To the contrary was the decision in Moody v. Flowers, 256 F.Supp. 195 (M.D. Ala.1966), vacated and remanded 387 U. S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967) (because a three-judge court had been improperly convened), a case seeking to enjoin the enforcement of an Alabama statute prescribing the apportionment and districting scheme for electing members of the Houston County Board of Revenue and Control. The district court refused to apply the Reynolds standard since the Supreme Court had not extended the principle to local governmental bodies. The court held that equal protection of the law did not require that local bodies with limited powers be apportioned on a population basis.

A similar result was reached in Stokes v. Fortson, 234 F.Supp. 575 (N.D.Ga. 1964), involving judicial elections where the court stated that judges are not representatives and do not espouse the cause of a particular constituency; in Lynch v. Torquato, supra, involving local political party central committees but containing the dictum that the rule would apply to a county board of supervisors; and in Johnson v. Genesee County, 232 F.Supp.

567 (E.D.Mich.1964), involving a local school board but decided only three days after *Reynolds*.

Some courts holding that the *Reynolds* principle should not be extended to local governmental units have adopted this view partially at least on the theory that once a state legislature has been apportioned on a constitutional basis, it will not fail to correct any malapportionment that may exist in its agencies and lower governmental units. When the problem of malapportionment in the state legislatures arose, the political process in many states was completely stalemated with state legislators unwilling to redistrict themselves out of legislative seats. In that situation there was no recourse other than to the judiciary. This same problem, the reasoning goes, is not present with regard to local governmental units in that the state legislature has the power to redistrict these bodies. It has been said that once a state legislature is properly apportioned, there is every reason to believe that it will in turn reapportion local governmental units, and since this is an issue better left to a political body, the court should not interfere. Johnson v. Genesee County, supra.

■ Whether or not this reasoning is valid in some instances, the Court is of the opinion that it must be rejected in this case. As already stated, the Tennessee General Assembly has passed a redistricting plan for the Rutherford County Quarterly Court, but before this plan goes into effect it must be approved by the Quarterly County Court itself. The Quarterly County Court, after refusing even to consider the matter on two occasions, has now by a vote of thirty to twenty rejected this admittedly fair and constitutional plan. Thus in this case there is present a stalemated situation with the beneficiaries of malapportionment refusing to alter the existing inequity. While the Court agrees that apportionment is an issue better left, if possible, to a political body, there is in this situation no political body in which the matter can be properly resolved. The actions of the Rutherford County Quarterly Court demonstrate that the plaintiffs' only recourse is to the judiciary.

■ In their pleadings plaintiffs contend, and defendants admit, that malapportionment does exist under the present scheme of districting for the Rutherford County Quarterly Court. The Court is of the opinion that the plaintiffs' votes for members of the Quarterly County Court are substantially diluted because of their place of residence and that this dilution is invidiously discriminatory.[5] The Court is further of the opinion, as stated in Strickland v. Burns, supra at 836 (concurring opinion), that the difference between this case and Reynolds v. Sims, supra, is one of degree and not of principle. Local government is the government closest to the people. Units of local government engage in activities of great significance affecting all members of the community. The right of a citizen to an equally weighted vote in local government elections is just as important as in elections for the state legislature. The existing invidious discrimination between voters for members of the Rutherford County Quarterly Court must, therefore, be condemned under the "one man, one vote" principle and under the equal protection clause of the Fourteenth Amendment.

5. The Supreme Court has held that equal apportionment of state legislatures is required but has not held whether this apportionment is to be determined on the basis of population or voter registration. Since the 1960 Federal Census is not broken down as to the civil districts of Rutherford County, the Court has used voter registration as the standard in determining that the present scheme of districting constitutes invidious discrimination as to the plaintiffs. The Court takes judicial notice, however, of the fact that the census does show a concentration of population in the Murfreesboro and Smyrna areas, and the Court is of the opinion that the use of population figures as the standard also reflects invidious discrimination.

Local governmental bodies have traditionally been regarded as agencies of the state government and have always been subject to the provisions of the Fourteenth Amendment. In cases involving racial discrimination, for example, the Supreme Court has consistently held that the Fourteenth Amendment applies to all state action, including action of subordinate agencies of the state government. E. g., Cooper v. Aaron, 358 U.S. 1, 17, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). If, therefore, the Fourteenth Amendment requires that state legislatures be elected from equally populated districts, it also requires that members of local governmental bodies be elected on a similar basis. As far as the Federal Constitution is concerned, a state may refuse to set up an elective process for the selection of city or county officials. Except as provided otherwise by its own Constitution, it may provide for appointment of such officials. Sailors v. Board of Education, supra. When an elective method is chosen, the Fourteenth Amendment imposes certain limits on the use of that method. See, Note, 79 Harv.L. Rev. 1228, 1270–71 (1966).

In reaching this result the Court adheres to its view expressed in a concurring opinion in *Strickland* that the result of the case should not turn on whether the functions of the local governmental body are classified as legislative or administrative. To pursue the elusive distinction between legislative and administrative functions is a fruitless venture. "So long as a subordinate body is vested with significant and important powers of government, whether they be labelled legislative, administrative, or both, I can see no reason why it should be permissible under the equal protection clause for a state arbitrarily to debase the value of one person's vote in favor of another." Strickland v. Burns, supra at 836 (concurring opinion). The result of a case should turn upon the substantive importance of the powers and functions possessed by a particular local governmental body and not upon the label that

is given it. Comment, 21 Vand.L.Rev. 153, 156–57 (1967).

Even assuming arguendo, however, that the administrative-legislative distinction is a valid one, the functions of the Rutherford County Quarterly Court must certainly fall within the legislative category. The powers to levy taxes, fix the rate of taxation, borrow money, issue bonds, and appropriate money for county purposes are legislative in nature by any definitional standard. If, therefore, the *Reynolds* doctrine only extends to local governmental units legislative in nature, the principle must still be applied in this case.

Judgment will be entered sustaining said motion and (a) declaring the present scheme of districting for the Rutherford County Quarterly Court unconstitutional; (b) permanently enjoining the defendants to this action and the members of the Rutherford County Board of Election Commissioners (to be made parties to this action) and all other state and local election officials from holding any election for members of the Quarterly County Court of Rutherford County under the said present scheme of districting for said county, or in any manner inconsistent with the new plan of districting for said county hereinafter approved; (c) declaring that the new plan of districting for members of the Rutherford County Quarterly Court shall be in accordance with the terms and provisions of Sec. 1 of Chapter 113 of the 1967 Private Acts of Tennessee, with two justices of the peace being elected from each of the twenty-one civil districts therein described and set forth; (d) directing and mandatorily enjoining the members of the Rutherford County Board of Election Commissioners to call for that county an election within ninety days from and after February 23, 1968, for the purpose of electing justices of the peace to constitute the membership of the Rutherford County Quarterly Court in accordance with the new plan of districting approved herein; (e) directing that the justices of the peace so elected shall

be sworn in and shall assume the duties of their respective offices at the next regular quarterly meeting of the Rutherford County Quarterly Court following said election; and (f) directing the issuance instanter of supplemental process making each member of the Rutherford County Board of Election Commissioners a party to this action for the limited purpose of effectuating and carrying out the injunctive process herein ordered, a certified copy of this opinion and judgment entered pursuant thereto to be served upon each member of the said Rutherford County Board of Election Commissioners. The judgment will further provide that the Court retains jurisdiction of the action for the purpose of entering any further orders, either upon its own motion or upon the motion of any party, including the said election commissioners, which may become necessary to enforce and effectuate the rulings herein made.

## APPENDIX

The table set forth below enumerates the extent of malapportionment in Rutherford County by showing the number of registered voters per justice of the peace for each civil district.

| District | No. of Justices of the Peace | No. of Registered Voters | No. reg. Voters per Justice of the Peace |
|---|---|---|---|
| 1 | 2 | 148 | 74 |
| 2 | 2 | 98 | 49 |
| 3 | 3 | 952 | 317 |
| 4 | 2 | 250 | 125 |
| 5 | 2 | 306 | 153 |
| 6 | 2 | 427 | 214 |
| 7 | 2 | 313 | 157 |
| 8 | 3 | 624 | 208 |
| 9 | 2 | 587 | 294 |
| 10 | 2 | 366 | 183 |
| 11 | 2 | 402 | 201 |
| 12 | 2 | 330 | 165 |
| 13 | 4 | 9,935 | 2,483 |
| 14 | 2 | 252 | 126 |
| 15 | 2 | 331 | 166 |
| 16 | 2 | 240 | 120 |
| 17 | 2 | 156 | 78 |
| 18 | 2 | 1,220 | 610 |
| 19 | 2 | 414 | 207 |
| 20 | 2 | 204 | 102 |
| 21 | 2 | 690 | 345 |
| 22 | 2 | 425 | 213 |
| 23 | 2 | 338 | 169 |
| 24 | 2 | 246 | 123 |
| 25 | 2 | 210 | 105 |

The voter registration figures cited above were taken from the books of the County Registrar. The figures represent the number of registered voters as of July 5, 1966, the date on which the books were closed for the August 4, 1966, election.