**Don Lee HANCOCK, Plaintiff,**

v.

**Harry S. AVERY, Commissioner, Tennessee Department of Corrections and Lake F. Russell, Warden, Tennessee State Penitentiary, Defendants.**

**Civ. No. 5385.**

United States District Court
M. D. Tennessee,
Nashville Division.

July 2, 1969.

Richard E. Rudesill, Nashville, Tenn., for plaintiff.

Elmer D. Davies, Jr., Asst. Atty. Gen., Nashville, Tenn., for defendants.

## OPINION

WILLIAM E. MILLER, Chief Judge.

This action is before the Court for a temporary restraining order on the plaintiff's allegation that he has been subjected to cruel and unusual punishment. The action is before the Court on the amended complaint of Don Lee Hancock, an inmate of the Tennessee State Penitentiary at Nashville. Named as defendants in the original complaint are the former Commissioner of the Tennessee Department of Corrections, the former Warden of the Tennessee State Penitentiary at Nashville, and in the amended complaint their respective successors.

Plaintiff seeks injunctive relief from cruel and unusual punishment pursuant to 28 U.S.C.A. § 2281 et seq. More specifically, he prays that the Court grant injunctive relief restraining the enforcement, operation, or execution of T.C.A. § 41–707 which provides as follows:

> Solitary confinement for violation of rules:—If any convict neglects or refuses to perform the labor assigned him or willfully injures any of the materials, implements, or tools, or engages in conversation with another convict, or in any other manner violates any of the regulations of the penitentiary, he may be punished by solitary confinement for a period not exceeding thirty (30) days for each offense, at the discretion of the warden, or person acting in his place.

In support of plaintiff's allegations of cruel and unusual punishment, the record reveals the following facts. On June 3, 1969, plaintiff was placed in a so-called "dry cell" by prison officials for purposes of solitary confinement pursuant to the authority granted them by T.C.A. § 41–707 as set out above. The dry cell in which petitioner is confined

measures approximately five by eight feet, is of concrete construction, and has a single steel door. The cell is unlighted save for dim artificial light which seeps into the cell from the outside corridor through two small slit screens in the cell door. Plaintiff alleges that he is thus being deprived of adequate light and ventilation for the entire duration of his stay in the cell.

The interior of the cell is devoid of furnishings except that there is at the rear of the cell a hole constructed to receive bodily wastes. There is, however, no mechanism within the cell to allow an occupant to flush waste material from the hole. Rather, the flushing operation is controlled by a guard operating a flushing device located outside of the cell. This operation is carried out only five times every twenty-four hours, three times during daylight hours and twice at night. As a result of this infrequent flushing, objectionable odors often permeate the cell.

While there is a factual dispute as to whether or not the dry cell had been cleaned when plaintiff was placed in it there is no dispute as to the fact that it is not normally cleaned during the duration of a prisoner's stay in the cell.

Plaintiff has been forced to remain in the dry cell without any means of cleaning his hands, body or teeth. He is denied the use of soap, towel, toilet paper, and other hygienic materials. No means have been provided which would enable him to clean any part of his body at anytime. He is fed three times a day, a slice of bread at breakfast and supper, and a regular meal at noon. The noon meal is folded into a paper container and given to plaintiff by sliding it through a small crack in the cell door. It is apparent from the foregoing facts that plaintiff is thus forced to handle and eat his food without any provision for cleanliness or even minimal sanitary conditions.

During the term of his confinement in the dry cell, plaintiff has not been permitted to wear clothing of any kind and is being forced to remain in the cell entirely nude. As a result, he is forced to sleep completely nude on the bare concrete floor. Even though he has requested a blanket, its use has been denied him.

Countering the contentions of plaintiff that he is being subjected to cruel and unusual punishment, defendants argue that plaintiff's confinement in the dry cell was necessary to protect the safety of prison personnel and plaintiff's own safety. They contend that confinement of plaintiff without clothing in the totally barren cell was necessary to prevent his access to any material from which a weapon could be fashioned for use against himself or prison personnel. They further contend that articles of clothing, plumbing fixtures and furnishings could all provide raw material for such a weapon and thus must be denied to the plaintiff. Defendants argue that plaintiff's health was not seriously endangered by such practices because he had daily opportunity to make medical complaints to prison medical personnel. Defendants' concern with these matters arises out of the fact that plaintiff has twice attempted suicide and is suspected of involvement in the serious stabbing of a prison guard. Furthermore, plaintiff has twice attempted to escape from cells less secure than the dry cell. It is defendants' contention that dry cells are employed only for the housing of those inmates who are so incorrigible as to be beyond the reach of normal methods of confinement. Finally, it is defendants' basic position that the determination as to the methods of dealing with such incorrigible persons is a matter of internal management of state prisons and should be left to the discretion of prison administrators.

■■ Before reaching the merits of plaintiff's claim, the Court must deal with a preliminary matter. Although injunctive relief is sought under 28 U.S. C.A. § 2281 et seq., which would require the convening of a three-judge court, the Court concludes that a three-judge court is not necessary in the instant case.

The reason for this conclusion lies in the fact that here the substantial federal claim is not that the statute involved [T.C.A. § 41–707] is facially unconstitutional, but that the statute as actually applied in plaintiff's case is violative of his constitutional right to be free from cruel and unusual punishment. This Court has held in the past that a three-judge court is necessary under 28 U.S.C.A. § 2281 only where the constitutionality of a state statute itself is challenged. Where, as here, only the application of such a statute is subjected to constitutional attack, a three-judge court is without jurisdiction under 28 U.S.C.A. § 2281. See Hinton v. Threet, 280 F. Supp. 831 (M.D.Tenn.1968), and Liveright v. Joint Committee of General Assembly of State of Tennessee, 279 F. Supp. 205 (M.D.Tenn.1968). This conclusion, however, does not mean that plaintiff is without a remedy simply because he claims relief only under the three-judge court statute. In the Court's view the general allegations that plaintiff's constitutional rights have been violated by the imposition of cruel and unusual punishment, entitle him to relief under the Civil Rights Act, 42 U.S.C.A. § 1983, although that Act is not invoked strike eo nomine. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The claim will therefore be treated as one properly arising under 42 U.S.C.A. § 1983.

Turning to the merits of the claim with respect to cruel and unusual punishment in contravention of the Eighth Amendment, it appears that the legal principles involved have been judicially declared with a fair degree of certainty. The Cruel and Unusual Punishment Clause of the Eighth Amendment has been held applicable to the states through its incorporation into the Due Process Clause of the Fourteenth Amendment. Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Furthermore, it is clear that 42 U.S.C.A. § 1983 creates a cause of action for deprivation of constitutional rights against persons acting under color of state law. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961). Of equal clarity is the rule that persons confined in state prisons may invoke the protection of 42 U.S.C.A. § 1983. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Wright v. McMann, 387 F.2d 519 (2d Cir. 1967); Stiltner v. Rhay, 322 F.2d 314 (9th Cir. 1963); Jordan v. Fitzharris, 257 F.Supp. 674 (N.D.Calif. 1966). The Court is aware of the fact that until quite recently federal courts generally declined to entertain charges based on 42 U.S.C.A. § 1983 which arose out of disciplinary procedures in state prisons. This was due to a reluctance on the part of the federal courts to interfere in the internal administration of state prisons and the belief that a prisoner first had to exhaust all available state remedies before turning to the federal courts. As to the matter of exhaustion of state remedies, it is presently the rule that where an action is appropriately brought under provisions of the Civil Rights Act, the exhaustion of state remedies is not a condition precedent to federal jurisdiction. State and federal courts have concurrent jurisdiction in such cases. McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, *supra*, Wright v. McMann, *supra*. It is important to note here, however, that the Civil Rights Act cannot be used in a situation appropriate to habeas corpus relief, as an alternative to the habeas corpus statutes, so as to circumvent the requirement of those statutes that state

remedies be exhausted before federal relief is sought. Smartt v. Avery, 411 F.2d 408 (6th Cir. 1969); Johnson v. Walker, 317 F.2d 418 (6th Cir., 1963). The instant case, however, does not present a habeas corpus situation since plaintiff is not challenging the validity of his sentence with the ultimate object of obtaining release from the penitentiary. Instead, he is challenging the validity of punishments administered which are incidental to his sentence. Clearly, therefore, the instant case does not fall within the rule of Smartt v. Avery, *supra*, though it does present a cause of action under the Civil Rights Act appropriate for determination by this Court.

As to the traditional preference for leaving matters of internal prison management to state officials, an analysis of recent cases indicates that while federal courts are still sensitive to the problems created by interference of the federal judiciary in matters involving the internal discipline of state prisons, they will not hesitate to intervene in appropriate cases. That this intervention may extend to an examination of maximum security procedures in state prisons in order to insure the protection of constitutional rights is amply supported by precedent. See, e. g., Burns v. Swenson, 288 F.Supp. 4 (W.D.Mo.1968); Cullum v. California Dept. of Corrections, 267 F.Supp. 524 (1967); Graham v. Willingham, 384 F.2d 367 (10th Cir. 1967); Jordan v. Fitzharris, *supra*; Wright v. McMann, *supra*; contra, Loux v. Rhay, 375 F.2d 55 (9th Cir. 1967). While the rule remains that matters of state prison discipline are not ordinarily subject to examination in federal court, the rule is otherwise if the treatment of prisoners is of such a nature that their constitutional rights are violated.

Federal courts have been particularly concerned in recent years with protecting the prisoner's Eighth Amendment right to be free from cruel and unusual punishment. It is evident that among the many rights secured to state prisoners under the Civil Rights Act, 42 U.S.C.A., § 1983, one of the most important is the right to seek relief from cruel and unusual punishment of a sort that contravenes the Eighth Amendment. Beard v. Lee, 396 F.2d 749 (5th Cir. 1968); Wright v. McMann, *supra;* Jordan v. Fitzharris, *supra.* Just what constitutes cruel and unusual punishment in the constitutional sense is a matter which defies concrete definition. However, it has long been understood that the concept of cruel and unusual punishment is one of wide application capable of acquiring new depths of meaning to conform to more enlightened concepts of criminal justice. Weems v. United States, 217 U.S. 349, 368, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910). There appear to be several useful tests for the determination of whether or not cruel and unusual punishment is present in a given case. One such test is to ask whether under all the circumstances the punishment in question is "of such a character * * * as to shock general conscience or to be intolerable to fundamental fairness." Lee v. Tahash, 352 F.2d 970, 972 (8th Cir., 1965). Such a judgment should be made in light of "developing concepts of elemental decency. Weems v. United States, *supra*, 217 U.S. at 378, 30 S.Ct. at 544;" Jordan v. Fitzharris, *supra*, 257 F.Supp. at 679. Also, "a punishment may be considered cruel and unusual when, although applied in pursuit of a legitimate penal aim, it goes beyond what is necessary to achieve that aim; that is, when a punishment is unnecessarily cruel in view of the purpose for which it is used. Weems v. United States, *supra*, 217 U.S. at 370, 30 S.Ct. at 544;" Jordan v. Fitzharris, *supra*, 257 F.Supp. at 679.

Applying both of these tests to the instant case, the Court finds that the effect of confining plaintiff in the dry cell under the conditions shown to have existed was to subject him to cruel and unusual punishment in violation of the Eighth Amendment. The conditions of his dry cell confinement are such as to make it evident that fundamental con-

cepts of decency did not prevail. Particularly barbaric are the facts that plaintiff is forced to sleep in the nude on a bare concrete floor without even the comfort of a blanket and that he is deprived at all times of adequate light and ventilation. Equally offensive is the fact that he is provided with no means by which he can maintain his personal cleanliness, with the result that he is forced to live and eat under animal-like conditions. The debasing conditions to which plaintiff is subjected offend more than some mere "fastidious squeamishness or private sentimentalism." Rochin v. People of California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). It is clear that requiring a prisoner to live, eat and sleep in such degrading circumstances does violence to civilized standards of human decency. Wright v. McMann, *supra*; Jordan v. Fitzharris, *supra*.

It is also apparent that the dry cell punishment, as administered in the instant case, is unnecessarily cruel in view of the purpose for which it is used. The stated aims in confining plaintiff in the dry cell were to protect him from self-inflicted injury [1], to protect the general prison population and personnel from violent acts on his part, and to prevent his escape. Solitary confinement for the purpose of achieving such goals is not per se an unconstitutional form of punishment. Graham v. Willingham, *supra*. However, the Court is of the opinion that such goals can be attained without requiring a prisoner to live in the exacerbated conditions of filth and discomfort demonstrated in the instant case. Where prison officials impose such deplorable living conditions in conjunction with solitary confinement, the Court is compelled to find that cruel and unusual punishment has been imposed in violation of the Constitution.

While it is true, as the defendants assert, that all imprisonment is to an extent inhumane, this fact does not excuse the imposition of forms of punishment so harsh as to violate basic standards of human decency.

The conclusion here reached [2] is not altered because the dry cell confinement under prison regulations could not exceed 15 days (15 days less than the maximum allowed by the state statute). Confinement under the conditions of harshness and cruelty reflected by the present record should not be tolerated for any length of time, however brief.

This opinion constitutes the Court's findings of fact and conclusions of law in support of the temporary restraining order heretofore issued.

Counsel for the respective parties are requested to confer to determine whether agreement may be reached that no further hearing is required and that on the basis of the Court's opinion a permanent injunction may issue to enjoin confinement in the dry cell under the circumstances of this case. Rulings on other issues in the case will be reserved.

1. Where an inmate is intent on suicide, even such extreme measures as dry cell confinement have not prevented it. See Jordan v. Fitzharris, 257 F.Supp. 674 at 680. (N.D.Calif.1966).

2. Two earlier cases reaching the same result on practically identical facts are Wright v. McMann, 387 F.2d 519 (2d Cir., 1967), and Jordan v. Fitzharris, 257 F.Supp. 674 (N.D.Calif.1966). Even where relief has been denied to petitioners claiming cruel and unusual punishment, courts have noted in dicta that dry cell conditions such as prevail in the instant case are of such a nature as to constitute forbidden cruel and unusual punishment. See, e. g., Beard v. Lee, 396 F.2d 749, 751 at n. 1 (5th Cir., 1965); Cullum v. California Dept. of Corrections, 267 F.Supp. 524 (1967).