Lorraine O'CONNORS

v.

Judith HELFGOTT et al.

No. 84–125–Appeal.

Supreme Court of Rhode Island.

July 24, 1984.

Robert G. Flanders, Jr., Michael DiBiase, Edwards & Angell, Providence, for plaintiff.

Bradford Gorham, Gorham & Gorham, Vincent J. Piccirilli, Providence, for defendants.

## OPINION

KELLEHER, Justice.

The plaintiff in this action, Lorraine O'Connors, is a registered voter of Glocester, Rhode Island, and a member of the Glocester School Committee as well as of the Foster-Glocester Regional School Committee. The defendants are the town of Foster, the Foster-Glocester School Committee, and the Foster representatives on the regional school committee. O'Connors brought this action in the Superior Court, claiming that the regional committee, as it is currently composed, does not meet the constitutional requirements of section 1 of the Fourteenth Amendment to the United States Constitution (the equal-protection clause). The plaintiff also alleges a violation of G.L. 1956 (1981 Reenactment) § 16-3-7.1, which provides that all regional school committees are to be selected from "voting districts as nearly equal in population as is practicable within each town in the district, and member towns in such districts shall be entitled to representation on such school committee in proportion to their population."

At issue is whether the system of election to the Foster-Glocester Regional School Committee deprives the residents of

the town of Glocester of equal protection of the law and violates the constitutional mandate of one-person, one-vote. *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). In order to enforce the mandate of one-person, one-vote, plaintiff brought a civil rights action in Superior Court, seeking a declaratory judgment finding the committee elected unconstitutionally and injunctive relief. Although the trial justice did find the committee unconstitutionally apportioned, he refused to grant plaintiff's injunctive relief. Both parties appeal.

No dispute exists in regard to the basic operative facts. The Foster-Glocester Regional School Committee is composed of six representatives from the towns of Foster and Glocester. The school committees in each town consist of three members. Membership on the committee of the respective town makes one automatically a member of the regional committee. The individual school committees in their respective towns preside over grades kindergarten through six. The regional committee governs grades six through twelve. The 1980 National Census indicated that in 1980 the population of Glocester was 7,485 and that of Foster 3,346.

Since the responsibility for providing for public education in this state is constitutionally allotted to the General Assembly (section 1 of article XII of the Rhode Island Constitution), an act of the Legislature was required to permit the towns of Foster and Glocester to pursue a regional school district. General Laws 1956 (1981 Reenactment) § 16–3–1 to § 16–3–25 provides for the establishment of regional school districts in order "to assist communities within the state to operate schools on a more efficient and economic basis." (Section 16–3–1.)

Both the town council of Foster and that of Glocester approved the creation of a regional school district in 1958, and the voters of each town also accepted the plan. Therefore, P.L. 1958, ch. 109, established a regional school district comprising the towns of Foster and Glocester in accordance with the town councils' actions. This regional council was to be composed of six members, "each of whom shall be a duly elected or appointed member of the school committee of the respective towns." As noted previously, by the terms of the agreement, members of the regional committee are and have been members of the local school committee.

The powers and duties of a regional school committee are codified at § 16–3–11. These powers and duties include the right to issue bonds, to make temporary borrowings on notes, to apply for and receive state or federal funds, and to receive and disburse funds for any school-district purpose. The committee is also empowered to engage a superintendent of the district.

Section 16–3–7.1, pertaining to equalized representation on regional school district committees, was enacted pursuant to the decisions of the United States Supreme Court in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and subsequent cases that recognized the constitutional mandate of one-person, one-vote. The Legislature, in adopting this act, was also mindful of the same doctrine discussed in *Sweeney v. Notte,* 95 R.I. 68, 183 A.2d 296 (1962). Public Laws 1970, ch. 225.

Since the population of Foster is approximately one-half that of Glocester yet the representation on the committee remains at three for each town, plaintiff charges that her vote is worth only one-half that of a Foster vote. That is, essentially, the basis for this suit.

Before we address the constitutional merits of this case, we must first consider the questions raised by defendants' cross-appeal. These questions relate to the trial justice's denial of defendants' motions to dismiss and affirmative defenses. The motions to dismiss alleged that the court lacked both personal and subject-matter jurisdiction over defendant Foster and the individual committee members; the affirmative defenses alleged that plaintiff did not

first exhaust available political remedies before pursuing action in the courts.[1]

Addressing the latter claim first, defendants note that the agreement between the town of Foster and the town of Glocester also provided for the amendment of that agreement. Two options are available to initiate the amendment procedure. Either 10 percent of the voters of either town or a majority vote of the members of the committee may petition to amend the agreement. The second option was not available since three of the six committee members were originally plaintiffs in this suit.[2]

Therefore, the first option was the only procedure available. Ten percent of the electors of either town must sign the amendment petition and then deliver it to the clerk of the regional district committee. The clerk then transmits it to the town councils, which place the amendment on the agenda for a special town meeting. A majority of the voters present at each town meeting must accept the amendment in order for it to take effect.

Although the likelihood of a majority of Foster voters voting to approve an amendment effectively diluting the strength of its representation on the regional school committee is slight, futility is not the reason that plaintiff is not first forced to follow this course of action. This civil rights action raises serious constitutional questions. It alleges a violation of the principles extolling the importance of the goal of one-person, one-vote enunciated in *Reynolds v. Sims* and *Sweeney v. Notte,* both *supra.*[3]

If plaintiff was required first to exhaust the political remedy, the effect would be a delay in the protection of a constitutional principle.

The United States Supreme Court has recently had the opportunity to consider the propriety of requiring exhaustion in the face of a deprivation of federal constitutional rights. In *Patsy v. Bd. of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Court initially noted that it was the purpose of the Civil Rights Act to open the doors of the courthouse to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights. 457 U.S. at 504, 102 S.Ct. at 2562, 73 L.Ed.2d at 180. The Court therefore held that a civil rights action does not require exhaustion of administrative remedies prior to proceeding in court.

The right infringed upon here is as precious as any secured by the Constitution. The fact that the election is for a school committee member as opposed to a United States Senator is of little importance. "If there is any way of determining the importance of choosing a particular government official, we think the decision of the State to select that official by popular vote is a strong enough indication that the choice is an important one." *Hadley v. Junior College District,* 397 U.S. 50, 55, 90 S.Ct. 791, 795, 25 L.Ed.2d 45, 50 (1970).

■ If the 10-percent vote procedure is required prior to the bringing of legal ac-

---

1. After oral argument, defendants, relying on this court's holding in *Hood v. Hawkins,* 478 A.2d 181 (R.I.1984), filed a motion to dismiss plaintiff's appeal, claiming that her notice of appeal was improper as it did not indicate the date of the judgment appealed from. However, here there was only one judgment, and there is absolutely no ambiguity as to the specific judgment from which the appeal is being prosecuted.

2. The defendants also claim that since O'Connors is a member of the regional school committee, she should be barred from suit since she is, in effect, suing herself; and they cite *Barber v. Barber,* 32 R.I. 266, 79 A. 482 (1911), for the

proposition. However, that case only held that Barber could not sue himself in his capacity as a town treasurer primarily to satisfy a monetary judgment. Furthermore, O'Connors is suing as a voter whose vote has been diluted; she is not suing the committee to follow internal procedures as was the case in *Carsten v. Psychology Examining Committee,* 27 Cal.3d 793, 614 P.2d 276, 166 Cal.Rptr. 844 (1980).

3. Of course, this court remains equally respectful of the one-person, one-vote doctrine. Recently, in *Holmes v. Farmer,* R.I., 475 A.2d 976, 988 (1984), we stated unequivocally that a vote is not to be diluted.

tion, the result will be further delay, with further injury to a constitutional right. The mere fact that population disparity has existed in the two towns since the institution of the regional committee is no reason to allow further delay.

This court has also indicated adherence to the position that administrative procedures need not be exhausted. For example, *Frank Ansuini, Inc. v. City of Cranston,* 107 R.I. 63, 264 A.2d 910 (1970), held that no exhaustion of administrative remedies was necessary when the plaintiff was confronted with an unconstitutional statute. *See also Taylor v. Marshall,* 119 R.I. 171, 376 A.2d 712 (1977). These cases clearly establish that the trial justice was correct in denying the affirmative defenses raised by defendants.

■ The remaining significant motions to dismiss were denied by the trial justice for a lack of evidence presented by defendants on the matter. For example, defendants claimed that the Home Rule Charter would be violated if representation on the regional school committee were changed. However, no evidence was presented by defendants about what the charter said. Furthermore, a Home Rule Charter does not supersede the Constitution. Similarly, defendants moved to dismiss owing to a prior action pending on the same facts, yet no evidence of this action was presented. Therefore, it was clearly proper for the trial court to rule against defendants on both motions.[4]

We may now turn to the substantive questions involved in this case. In response to defendants' cross-appeal, we first consider the trial justice's decision that the regional school committee was unconstitutionally apportioned. The defendants claim that this decision was incorrect for two reasons: first, the regional school committee is not a governmental entity that exer-

cises general authority, and second, *Brown v. Thomson,* 462 U.S. 835, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983), has somehow altered rigid adherence to the principle of one-person, one-vote.

The question of applicability of the doctrine in a school-committee context has been addressed generally in the Supreme Court and specifically in various federal-court cases.

In *Hadley v. Junior College District,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), the Supreme Court considered a Missouri law that allowed separate school districts to join together and form a consolidated junior college district. The separate districts elected six trustees to conduct and manage the necessary affairs of that district. *Id.* at 51, 90 S.Ct. at 792, 25 L.Ed.2d at 48. Three of the trustees were elected from Kansas City, which had 60 percent of the total population of that district. The appellants, residents of Kansas City, brought suit, alleging that their votes were being diluted unconstitutionally. *Id.* at 52, 90 S.Ct. at 793, 25 L.Ed.2d at 48. The Court held that the trustees' powers, levying and collecting taxes, issuing bonds, hiring and firing teachers, and acquiring property by condemnation, all indicated the performance of important governmental functions within the district. *Id.* at 53–54, 90 S.Ct. at 794, 25 L.Ed.2d at 49.

In finding for the appellants, the Court noted the importance of a school board in a political and governmental scheme. "Education has traditionally been a vital governmental function, and these trustees, whose election the State has opened to all qualified voters, are government officials in every relevant sense of that term." *Id.* at 56, 90 S.Ct. at 795, 25 L.Ed.2d at 51. The Court held that the Missouri scheme was an unconstitutional dilution of voting

---

4. The defendants also claim that they have been denied a jury trial with respect to the amended claim for declaratory relief. In reality, the case is a civil action asking for injunctive relief in which no one disputes the basic operative facts.

Therefore, the case is an equity action properly tried to the court. *Maryland Casualty Co. v. Sasso,* 98 R.I. 483, 204 A.2d 821 (1964). The oral motion for declaratory judgment in no way changed the very nature of the action.

strength. *Id.* at 57, 90 S.Ct. at 795–96, 25 L.Ed.2d at 51.

However, defendants argue that *Hadley* should not apply to the Foster-Glocester Regional Committee. They claim that *Hadley* is not properly applicable in this school-committee context. A survey of applicable cases does not indicate much credence in this position. For example, *Leopold v. Young*, 340 F.Supp. 1014 (D.Vt. 1972), considered a regional committee formed from four towns. The towns represented 16.9 percent, 17.2 percent, 30.4 percent, and 35.5 percent of the total population of the region. *Id.* at 1015. The court held that the determination of educational policies was a general governmental function that made the committee amenable to suit under the *Reynolds v. Sims* principle.

The defendants further argue that the fact that Foster and Glocester voluntarily entered the district precludes constitutional applicability. However, if any fundamental principle emanates from the very existence of our Constitution, it must be that the will of a majority cannot deprive a minority of its constitutional rights. *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 638, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628, 1638 (1943).

This idea was expanded in the same fact pattern as the instant case in *Powers v. Maine School Administrative District No. 1*, 359 F.Supp. 30 (D.Me.1973). *Powers*, again in a regional-committee context, found unconstitutional vote dilution in a situation in which the smallest town of the committee had 1 representative for every 258 people and the largest 1 for every 1,272. *Id.* at 32. The court held that the mere fact that the towns voluntarily joined the district did not preclude equal-protection review. *Id.* at 35. A number of cases considering similar situations have reached the same result. *See, e.g., Hinton v. Threet*, 280 F.Supp. 831 (M.D.Tenn.1968); *Strickland v. Burns*, 256 F.Supp. 824 (M.D.Tenn.1966); *Meyer v. Campbell*, 260 Iowa 1346, 152 N.W.2d 617 (1967).

■■■ Section 16–3–11 provides that a regional school district "shall be a body politic and corporate with all the powers and duties conferred by law upon school committees." This definition, together with the litany of additional powers and duties we recited *supra*, makes it clear that the regional district school committee is a general governmental body; therefore, the principles of one-person, one-vote apply to it.[5] Furthermore, the mere fact that the committee was formed as a result of a voluntary agreement between the towns does not change the result.[6]

In *Lucas v. Colorado General Assembly*, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964), the Supreme Court considered a faulty apportionment of congressional seats that nevertheless was approved by a majority of voters in every county in the state. The Court was not persuaded to abandon the Constitution in the face of a majority vote. "An individual's constitutionally protected right to cast an equally weighted vote cannot be denied even by a

---

**5.** *Brown v. Thomson*, 462 U.S. 835, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983), found no constitutional problem with the apportionment of the Wyoming State Legislature even though there was a deviation of 89 percent in the districts. However, the Court allowed the deviation because of its application of legitimate state policy. This policy was the preservation of county boundaries established at statehood. 462 U.S. at ——, 103 S.Ct. at 2698, 77 L.Ed.2d at 222. This decision in no way altered strict adherence to the *Reynolds v. Sims* policies. For example, during the same term, in *Karcher v. Daggett*, 462 U.S. 725, 103 S.Ct. 2653, 77 L.Ed.2d 133 (1983), the Court held that a New Jersey plan was unconstitutional where the deviation was only 0.6984 percent.

**6.** The committee was established in 1958, and defendants claim that the passage of time precludes plaintiff from bringing this suit by laches. The trial justice denied this claim. Application of that equitable doctrine is within the sound discretion of the trial justice. *Lombardi v. Lombardi*, 90 R.I. 205, 156 A.2d 911 (1959). We do not find that a constitutional claim such as this could be barred by applying that remedy. *DeLuca v. Sullivan*, 450 F.Supp. 736, 738 (D.Mass.1977). Furthermore, defendants were in no way prejudiced by the delay.

vote of a majority of the state's electorate * * *. A citizen's constitutional rights can hardly be infringed simply because a majority of the people choose that it be." *Id.* at 736–37, 84 S.Ct. at 1474, 12 L.Ed.2d at 647.

■ In light of the foregoing, we hold that the trial court was correct in finding that the Foster-Glocester Regional School District was unconstitutionally established. It is clear that boards of education, both district and county, whose members are elected by popular vote, must be apportioned according to the principle of one-person, one-vote.

Although this issue was decided in favor of plaintiff and a declaratory judgment finding the committee unconstitutional was entered, plaintiff appeals from the trial justice's decision that denied her any relief. This denial was for both desired injunctive relief and attorney's fees.

In her amended complaint, plaintiff sought a declaratory judgment declaring the committee's actions null and void, an injunction prohibiting further action by the committee and requiring new vote distribution on the committee, and attorney's fees.[7] Specifically, a preliminary injunction was requested requiring compliance with the equal-representation mandate of § 16–3–7.- 1. The plaintiff asked the court if a method for compliance were not in fact established within thirty days, to allocate the voting power among the regional committee members in such a way that the three Glocester representatives would be given two votes apiece.

The trial justice explained in his denial of the requested relief that by granting the injunction, he would essentially be rewriting a voluntary agreement entered into by the two towns. We have already rejected the proposition that a constitutionally protected right may be abrogated by agreement or majority vote. Certainly, the same

7. The joining of declaratory and injunctive relief is proper under our liberal joinder rules.

rationale cannot be used to deny the injunctive relief.

■ An injunction, this court has said many times, is an extraordinary remedy that requires a party either to do or to refrain from doing an act. *Brown v. Amaral*, R.I., 460 A.2d 7, 10 (1983). The plaintiff must show a threatened irreparable injury for which he or she has no adequate legal remedy. *Rhode Island Turnpike and Bridge Authority v. Cohen*, R.I., 433 A.2d 179, 182 (1981). The granting of an injunction is within a trial justice's discretion. *Brown v. Amaral*, 460 A.2d at 10.

■ In the instant case, we find that this discretion has been abused. The plaintiff has shown, and indeed the trial justice has found, that the committee's current composition, since it provides a Foster voter with twice the power of a Glocester voter, is unconstitutional. No amount of monetary damages can rectify this vote dilution, and without some type of injunctive relief the harm will continue.

To find that the committee's composition violates the Constitution, yet to deny relief nevertheless, is anomalous. It violates the legislative intent behind § 16–3–7.1, which expressly directs allegiance to the one-person, one-vote principle. Furthermore, the mere existence of a law, or a Constitution, without provisions to enforce that law makes it essentially meaningless. Although we can appreciate the hesitancy of the trial justice, nonetheless where fundamental rights are infringed, it is his duty to provide redress for them.

The several cases we have discussed above indicate a liberal use of a trial court's broad equity power. In *Powers v. Maine School Administrative District No. 1,* the court gave the parties ninety days in which to return with a reapportionment plan.. 359 F.Supp. at 36. *Leopold v. Young* issued a thirty-day order. 340 F.Supp. at 1019. This is an option available to the trial justice. Whatever action he

Superior Court Rules of Civil Procedure 18 and 20. *Duffy v. Mollo*, R.I., 400 A.2d 263 (1979).

takes must be prompt so that the rights of the aggrieved can be protected prior to the forthcoming 1984 election.

■ Finally, we turn to plaintiff's appeal from the denial of attorney's fees. 42 U.S.C.A. § 1988 (1981) provides that for cases brought under the civil rights act, attorneys' fees may be awarded, within the discretion of the trial court, to the prevailing parties. The attorneys'-fees provision is fully applicable to the state courts. *Maine v. Thiboutot,* 448 U.S. 1, 11, 100 S.Ct. 2502, 2508, 65 L.Ed.2d 555, 563 (1980).

■ The discretion of a court to deny attorney's fees to a prevailing party is limited. A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1266 (1968).

The reasons offered by the trial justice for refusing relief were that the town of Foster did not do, or fail to do, anything that caused this problem and that the school committee itself could not have reapportioned itself without "violating the legal mandates of its charter." The trial justice also held that it would be the "height of injustice" to award attorney's fees to plaintiff in a situation in which she had not first followed the amendment procedures.

■ This decision is a misapplication of the intent and purpose behind the Attorneys Fees Award Act of 1976, 42 U.S.C.A. § 1988. The basic rationale behind the act is that civil rights legislation can best be enforced by encouraging the public to act as private attorneys general. *Thiboutot v. State,* 405 A.2d 230, 239 (Me.1979), *aff'd,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Attorneys' fees are to be awarded to encourage enforcement of the Civil Rights Act by compensating persons who bring meritorious actions because they are thought to be advancing the public interest. *Coalition for Basic Human Needs v. King,* 691 F.2d 597, 602 (1st Cir.1982). The prevailing party is entitled only to reasonable attorney's fees that are compensatory, not punitive, in nature. *Bond v. Stanton,* 555 F.2d 172, 174 (7th Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978).

■ The lack of bad faith described by the trial justice is not a "special circumstance" that will deny an attorney's-fees award under § 1988. *Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 446 U.S. 719, 738, 100 S.Ct. 1967, 1977–78, 64 L.Ed.2d 641, 657 (1980). The Attorneys Fees Award Act is meant to compensate prevailing parties who bring civil rights suits. "The need for such lawsuits, and such payment, may well be greatest in just those instances in which lawyers and officials, in totally good faith, have opposing views about what state and federal law requires of them." *Coalition for Basic Human Needs v. King,* 691 F.2d 597, 602 (1st Cir.1982).

■ In light of these policies, which are statutorily enacted by Congress, we conclude that the trial justice erred in denying the plaintiff's request for attorney's fees.

The plaintiff's appeal is sustained, the defendants' cross-appeal is denied and dismissed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.