John KRITSKY, and United States of
America ex rel. John Kritsky,
Plaintiff-Petitioner,

v.

Paul D. McGINNIS, Commissioner of
Correction; Russell G. Oswald, Chair-
man of the Board of Parole, J. Edwin
LaVallee, Warden and Chairman of the
Prison Board of Clinton State Prison,
New York State Board of Parole and
New York State Department of Correc-
tion, Defendants-Respondents.

No. 69–CV–276.

United States District Court,
N. D. New York.

June 12, 1970.

Richard A. Kohn, Albany, Appointed
Counsel, for plaintiff.

Louis J. Lefkowitz, Atty. Gen., State
of New York, for respondents; Jack W.
Hoffman, Timothy F. O'Brien, Asst. At-
tys. Gen., of counsel.

JAMES T. FOLEY, Chief Judge.

MEMORANDUM—DECISION and OR-
DER

The plaintiff filed a handwritten com-
plaint based upon the civil rights stat-
utes and petition for habeas corpus in
the same combined form with similar is-
sues as filed in Rodriguez v. McGinnis
(N.D.N.Y.—December, 1969) 307 F.
Supp. 627, that after trial I ruled upon
in favor of Rodriguez. He paid the
$15.00 filing fee and thereafter I grant-
ed leave to prosecute his action in forma
pauperis. Attorney Richard A. Kohn,
who appeared for Rodriguez, agreed to
act as counsel for plaintiff, for which
assistance the Court is again grateful
inasmuch as there is no provision for
compensation of any kind or reimburse-
ment for expenses. Attorney Kohn rep-
resented the plaintiff at the hearing
held and submitted a substantial brief
in his behalf on the law and facts after
the transcript was available. Transcrip-
tion of the minutes of the hearing un-
derstandably took some time and caused
delay in the briefing. Two court report-
ers in this busy two Judge Court, where
we have the flow also of other purely
federal and important private and gov-
ernment civil and criminal cases as oth-

er District Courts do, place substantial burdens upon them in the coverage of our large geographical area to the same extent as it does upon the Judges deluged with state prisoner applications of every kind. Pressures of other work that I thought should be given priority prevented on my part the speedy disposition we try to give State prisoner applications where immediate liberty may be at stake. However, the filing in this Court of a substantial number of civil rights complaints for every grievance imaginable by New York State prisoners in recent years has slowed considerably the disposition within the desired reasonable time. However, in my judgment, the other numerous and substantial cases filed in this District Court in behalf of important private and governmental interests have the right to be processed, heard and decided also with reasonable dispatch. I reaffirm my statements in Rodriguez that it is my firm belief it would best serve the interests of justice and all concerned and be sensible if a little abstention were authorized when proper in the federal courts to allow a fully manned and recognized competent State Court system to hear these civil rights claims that primarily involve State interests, problems and concerns (See Wright v. McMann, 387 F.2d 519, at 528, Chief Judge Lumbard concurring).

A satisfactory hearing in this claim was held and references herein shall be to the transcript of it. In the complaint, the plaintiff requests a judgment declaring the disallowance of 939 days good behavior time toward the conditional release he elected formally for under certain New York statutory provisions was adjudged in such manner to be violative of constitutional rights of due process and imposing cruel and unusual punishment. (Pl.Ex. 1, §§ 230–a, 803(1), N.Y. Correction law (McKinney's Consol.Laws, c. 43, 1968 ed.); New York Penal Law, 70.30(4) (a); 70.40(1), (b), (McKinney's Consol.Laws, c. 40, 1967 ed.).

The position of the Assistant Attorney General in behalf of the defendants is the same as that taken and offered in Rodriguez, supra. The contentions (1) there is not jurisdiction under 28 U.S.C. § 1343(3), as so invoked to entertain the civil rights claim authorized by 42 U.S.C. § 1983, (2) that conditional release is in the same category as parole, being a matter of grace to be withheld at will, are answered in my Rodriguez writing in relation thereto and are adhered to by reference herein. (See also the difference between parole and conditional release—Task Force Report on Correction, issued by the President's Commission on Law Enforcement and Administration of Justice, p. 86). In Rodriguez, I pointed out that New York rulings expressly held that discretionary reductions for good behavior time cannot be arbitrarily withheld. (People ex rel. Stark v. Deegan (1968) 56 Misc.2d 567, 289 N.Y.S.2d 285; People ex rel. Roy v. Murphy (1962) 36 Misc.2d 501, pp. 503–504, 233 N.Y.S.2d 382). Inasmuch as New York seems adamant in arguing need for exhaustion of state remedies and lack of jurisdiction in a problem of this kind concerning loss of good time allegedly disallowed unconstitutionally, appeal is invited again to be expedited that may settle once and for all these questions that by now must be ripe for federal appellate review and rulings. Such appellate guidance will be of great assistance to this District Court in the planning and management of its calendars. (See Sostre v. Rockefeller et al., 312 F.Supp. 863, (S.D.N.Y.—68 Civ. 4058—Motley, J.) decided May 14, 1970).

The challenge of the petitioner who was produced in Albany on a writ of habeas corpus from Clinton Prison, two hundred miles away, was reduced before the hearing after conference with his attorney from 939 days disallowed to 590 days. This good time disallowance was thus narrowed to a single episode, unquestionably a serious one, that occurred in Auburn State Prison during March 1962. Two witnesses testified at the hearing, the plaintiff, who in my judg-

ment was as articulate a witness who could be heard and who gave his version of the serious incident in which he was admittedly involved, and that led to the judgment of the Principal Keeper set forth in Plaintiff Ex. A in this brief fashion: "To Segreg.—1½ years Lost Time". The lost time, or good behavior time credits taken for a year and one-half are computed to be 545 days, and the length of his segregation from March 14 to April 10, 1962 at Auburn and April 10 to July 28, 1962 at Clinton Prison, Dannemora, is the basis for the additional 45 days good time loss in issue. No good time by prison rule is earned while confined in segregation. (Def. Ex. B—Inmate's Rule Book, pp. 4–5). The only other witness, who testified was Francis Ryan, called by the plaintiff, Head Correctional Clerk at Clinton Prison who explained the law and rules and procedures applicable and the internal administrative methods followed by the so-called Prison Commutation Board to comply with the statutory review provision when good time forfeiture is reviewed and not restored (Tr. 75 et seq., §§ 234, 235, 236, N.Y.Corr. Law; 7 N.Y. C.R.R. (Correction—Codes, Rules & Regulation, § 60.4(e). Ryan with a long experience in Prison administration evidenced familiarity with all the procedures and at times as he testified sat when necessary as a member of the Commutation Board and was able to tell the full details of the way it actually operates and arrives at decision. (See particularly Tr. 96–105.)

The Plaintiff Kritsky was convicted in the former Court of General Sessions of New York County of Robbery First Degree on May 1, 1957. He was sentenced to an indeterminate term of 15–18 years. At the time of sentence, he was about 22 years of age and has been now more than 13 years in prison confinement.

The serious incident referred to previously was described by Kritsky in his testimony that stands in every respect uncontradicted in this record by other testimony concerning the circumstances of its happening. It seems that in 1962 the prisoners at Auburn in a protest move that Kritsky said occurred throughout the entire State prison system in an effort to persuade the New York legislature to grant by legislation ten days off the maximum sentence that would enable some prisoners to gain earlier release. (Tr. 28–29). Apparently, this protest later bore fruit and such legislation came into being (See also People ex rel. Clemente v. Warden (1961) 9 N.Y.2d 216, 213 N.Y.S.2d 55, 173 N.E.2d 784). Kritsky characterized the conduct of the prisoners as peaceful and said it consisted only of the prisoners entering and staying in their cells and refusing to come out to go to their work or other type assignments in the daily prison routine. The protest by their action lasted about one and a half days. The prisoners were warned that if they did not come out of their cells by a certain time they would lose one year good time and Kritsky said about ⅞ at Auburn did come out after this warning (Tr. 30). Kritsky came out about an hour later than the deadline, and the next morning went to his work as a clerk in a prison office. However, he testified he noticed many of his friends no longer there, so he went back that afternoon to his cell again contrary to what he was supposed to do. He was taken from the cell five to fifteen minutes later, and was taken to segregation where he was kept for a week to ten days before he came before the Principal Keeper for hearing. Again, I do not intend to minimize the seriousness of this entire affair, no matter how laudable the purposes, because it is evident prison discipline and order could be in great peril if protest movements, so commonplace and at times upsetting to some in these days, were to be given free rein in prison systems where firmness and application of quick and adequate discipline is clearly an essential to safeguard the security of a large prison and circumvent the start or spread of possible riot and rebellion. No court would want

to interfere with these delicate judgments.

However, as grave an intrusion as I think all these are, particularly when made by a federal court into administration of State prisons that do not really entail the cruelty or inhumaneness that shocks everyone, I find that the due process of rights of the plaintiff were violated in the type hearing given plaintiff in 1962. The hearing was held a week or ten days after the protest in a room off the segregation area where plaintiff had been confined with only the Principal Keeper, as the disciplinary authority and judge. The plaintiff's testimony is graphic description:

> "A He (Principal Keeper) advised me that I had been charged with advocating insurrection and a revolution and advocating incendiarism in the prison. He said, 'How do you plead?' I said, 'Not guilty.' He said, 'Eighteen months lost time.'
>
> I attempted to speak—
>
> THE COURT: Wait a minute. He said, 'How do you plead?'
>
> THE WITNESS: I said, 'Not guilty.'
>
> THE COURT: All right.
>
> THE WITNESS: I attempted to speak and he interrupted and said, 'That will be all.' And I replied, 'In other words, I am being summarily dismissed.' He said, 'Yes'."

In my judgment, this hearing, and I accept it as truthfully described by the plaintiff, falls far short of the fundamental fairness expected of due process requirements, no matter the need for summary disposition.

Defendant's Exhibit A, measuring by ruler about 5¼" by 8", is entitled "Disciplinary Action". It contains in most abbreviated form the charges against plaintiff, the substantial judgment rendered against him, and remarks of the disciplinary hearing officer, the Principal Keeper. The remarks without a single reference or elaboration of any kind to person or record concludes "Advocated bloodshed and burning place." There is only a dash in a large space before the word guilty which is difficult to accept as a valid admission of guilt by reason of record regularity in view of the flat contradiction by the plaintiff.

■■■■ Due process is an elusive concept but there is settled satisfactory guides to discern its absence or presence. What is due process depends on the circumstances and it varies with the subject matter and necessities of the situation. (Moyer v. Peabody (Holmes, J.) 212 U.S. 78, 84, 29 S.Ct. 235, 53 L.Ed. 410). A hearing to accord with due process must be given at a meaningful time and in a meaningful manner. (Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62). Under the concepts of the present day, it has been stated the decision maker should state reasons for the determination, indicate the evidence relied upon, and an impartial decision maker is essential. (Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287, 3/23/70). The right to be heard before being condemned to suffer grievous loss of any kind is a principle basic to our society. (Joint Anti-Fascist Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817). Applying these principles, I am constrained to rule there was a lack of due process that resulted in grievous loss to plaintiff by reason of continued confinement.

By this ruling, I do agree that in these prison disciplinary procedures there is no need for a full panoply of judicial due process which was the language and recommendation contained in the Task Force Report on Corrections, issued by the President's Commission on Law Enforcement and Administration of Justice, at p. 13. I would think sufficient and fair the four requisites outlined by Judge Wyzanski in Nolan v. Scafati (D.C.Mass.) 306 F.Supp. 1, 3, for proper procedure before prisoner such as plaintiff is subjected to a serious penalty. (See also Landman v. Peyton (4 Cir. 1966) 370 F.2d 135). The

ruling herein is also not to be construed as one to the effect that unrestricted and absolute right to free speech should be accorded prison inmates. (See Whitney v. California (1927) 274 U.S. 357, 373, 47 S.Ct. 641, 71 L.Ed. 1095; Roberts v. Pepersack (D.C.Maryland 1966) 256 F.Supp. 415, 428). Prison discipline is essential and certain rights have to be curtailed in order to achieve it. (United States ex rel. Wakeley v. Pennsylvania (D.C.E.D.Pa. 1965) 247 F.Supp. 7).

I also find as in Rodriguez a failure to comply with the statute of New York that directs the prison commutation board to forward its reasons in writing to the Commissioner of Correction for disallowance of good behavior time (N. Y.Correction Law, Section 236). There was a letter from the Warden, to the Commissioner, Def.Ex. C, derogatory to the conduct of plaintiff but it was conceded that this letter was not being offered as strict compliance with Section 236, but was sent for another purpose. (Tr. 102). In my judgment, the record in this case shows the importance this report of reasons might have in relation to the review by Commissioner of the disallowance by the Commutation Board. There is a progress report made by Correction Officer Burke that evaluates the conduct of the plaintiff and his willingness to work attitude in the most praiseworthy terms. (Tr. 107, 108.) Some of the terms are that plaintiff is courteous, cooperative, well behaved with good attitude toward society and authority, who does not need extra supervision and was a very exceptional worker. The appraisal directly contradicts the one contained in the letter of the Warden. Unfortunately, it is established that the Prison Commutation Board ordinarily would not have this progress report of a guard who was in the closest of contact with plaintiff.

My findings of fact are set forth above. My conclusion is that the plaintiff in the imposition of the lost time punishment and segregation was not accorded due process. My judgment declared hereby is that the disallowance of 590 days good behavior time resulting therefrom is void and unlawful as violative of the provisions of the Fourteenth Amendment of the United States Constitution. The Commissioner of Correction, a named defendant, is directed hereby to restore the good behavior time credit to plaintiff; such restoration will entitle plaintiff to release forthwith to parole supervision under his Conditional release election. If plaintiff is not released forthwith, the attorney for plaintiff shall submit a writ of habeas corpus to effect the release. All exhibits shall be filed with this decision in the Clerk's office at Utica.

Judgment shall enter granting the relief to the plaintiff particularly set forth in the above paragraph. This decision constitutes the judgment.

It is so ordered.