Eugene **RODRIGUEZ**, and the United
States of America ex rel. Eugene
Rodriguez, Plaintiff-Petitioner,

v.

Paul D. McGINNIS, Commissioner of
Correction; Russell G. Oswald, Chair-
man of the Board of Parole, J. Edwin
LaVallee, Warden and Chairman of the
Prison Board of Clinton State Prison;
New York State Board of Parole; and
the New York State Department of Cor-
rection, Defendants-Respondents.

No. 69–CV–348.

United States District Court
N. D. New York.

Dec. 23, 1969.

Richard A. Kohn, Albany, N. Y., for
plaintiff.

Louis J. Lefkowitz, Atty. Gen., State
of New York, for respondents; Jack W.
Hoffman, Timothy F. O'Brien, Asst. At-
tys. Gen., of counsel.

MEMORANDUM—DECISION and
ORDER

JAMES T. FOLEY, Chief Judge.

This typewritten pro se com-
plaint under the Civil Rights statutes is
combined with a petition for a writ of
habeas corpus. It rarely occurs, but the

plaintiff-petitioner forwarded to the Clerk the prescribed statutory fees for filing the complaint and petition. This form of application demonstrates again the ingenuity of state prisoners in following a pattern of a pleading that brought successful results. A similar combined application,—and I had direct contact with the case,—was filed in this Court in Daniel, and U. S. ex rel. Daniel v. McGinnis et al., in 69–CV–118, and was lawyer-prepared by the firm of Rabinowitz, Boudin & Standard, Attorneys in New York City. This same firm recently obtained a preliminary injunction from District Judge Motley, of the Southern District of New York, in Sostre v. Rockefeller et al., 68 Civ. 4058, by decision dated September 4, 1969, for an inmate of Green Haven Prison, New York, involving a claim based upon 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, statutes upon which jurisdiction for this action is based. Judge Motley stated flatly the Court had jurisdiction. Applying the legal principles to be followed in preliminary injunction applications, she ruled that keeping the plaintiff Sostre in segregation for more than a year on account of disciplinary charges may be totally disproportionate to the offenses charged and thus violative of the Eighth Amendment. It was stated that the plaintiff had demonstrated clear probability of success upon a final determination of the merits. The injunction restrained the Warden from holding the plaintiff in punitive segregation and from depriving him of the rights and privileges of the general prison population until final determination was made. The trial has been held, briefing directed, and the matter is under consideration. In the meantime, I understand the preliminary injunction has been complied with and Sostre was released from segregation. Reference is made to this action and the preliminary ruling to indicate again that no matter the reluctance of the past, it is now settled beyond question that claims of this kind alleging federal constitutional deprivation by State prisoners, if not frivolous on their face, are within the jurisdiction of the federal courts under the Civil Rights Act and must be entertained and determined.

■■ This fact should be recognized and accepted, because there is an increasing volume of judicial writing and comment to this effect. It is clear, as so well stated, that we have come a long way from some earlier attitudes toward rights of prisoners. (Jackson v. Godwin, 5 Cir., 400 F.2d 529.) Our own Circuit in Wright v. McMann, 2 Cir., 387 F.2d 519, at page 522, the noted case that involved a New York prisoner confined in segregation at Clinton Prison, remarked that the older cases retain little vitality; that there is no longer any question a state prisoner may bring an action under the Civil Rights Act, citing among other cases, Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030; and that the harshest blow to the old "hands-off" doctrine was struck by Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. It is settled too that the due process and equal protection processes of the Fourteenth Amendment follow prisoners into prison. (Washington v. Lee (D.C.N.D.Ala.), 263 F.Supp. 327, 331; aff'd per curiam, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212). The Civil Rights statutes, when relied upon for federal jurisdiction, do not require the exhaustion of state judicial remedies. (Houghton v. Shafer, 392 U. S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319; D'Amico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647; McNeese v. Board of Education, 373 U.S. 668, 83 S. Ct. 1433, 10 L.Ed.2d 622; Monroe v. Pape, supra; Wright v. McMann, supra, 387 F.2d at p. 524).

Specifically, in this instance, although the Assistant Attorney General tries to convert the complaint into solely a habeas corpus petition that alone, of course, would entail the usual requirement for exhaustion of state remedies, to my mind the habeas corpus petition in the combination here is merely a proper adjunct to insure full relief if the plaintiff prevails in the dominant

civil rights claim. (See Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939; Jones v. Peyton (E.D.Va.), 294 F. Supp. 173; United States ex rel. Stuart v. Yeager (D.C.New Jersey), 293 F. Supp. 1079; 28 U.S.C. § 1651). Cases directly in point that sustain in my judgment jurisdiction under the particular, narrow claim and issues raised thereby by this plaintiff-petitioner are: United States ex rel. Campbell v. Pate, 7 Cir., 401 F.2d 55, 57; Landman v. Peyton, 4 Cir., 370 F.2d 135; Sewell v. Pegelow, 4 Cir., 291 F.2d 196).

█ These federal authorities are set forth not as comprehensive review of all the law on the subject. Such federal writings are referred to merely to give several examples that there is full recognition by the federal courts that the primary authority and responsibility for prison administration and discipline remains, and should remain, with the State administrative personnel, and that the federal courts are never inclined to reach out to intrude unless,—and this is an important "unless" that New York should recognize,—there is sufficient showing procedures and regulations exist that impair the constitutional rights of prisoners. (Jordan v. Fitzharris (N. D.California), 257 F.Supp. 674, 680; Baxstrom v. Herold, 383 U.S. 107, 86 S. Ct. 760, 15 L.Ed.2d 620; United States ex rel. Schuster v. Herold, 2 Cir., 410 F. 2d 1071; cert. den. 396 U.S. 847, 90 S. Ct. 81, 24 L.Ed.2d 96.) This position is no more than a simple, common-sense one that is in accord with the American desire for fairness within its prison systems and such philosophy has been heralded in this day from a variety of sources. The new Chief Justice of the United States, Justice Burger, in an address to the American Bar Association, called for a comprehensive and profound examination into our penal system from beginning to end, and among the details he thought should be examined are the standards and programs for release. (American Bar Association News, Vol. 14, p. 5). Chief Judge Lumbard in his concurring opinion in Wright, supra,

387 F.2d at page 527, referred to—and I think recommended in effect to New York—consideration of the hearing procedures and safeguards set forth in the Task Force Report on Corrections, issued in May 1967 by the President's Commission on Law Enforcement and Administration of Justice. (See also State Prisons and the Free Community, Judge Jiudice, New York State Bar Journal, December 1969, p. 672.)

The President of the United States a short time ago called for consideration of a ten-year program with enormous appropriations to undertake search for improvements in the federal penal system that may become models for state corrections and prison administrators. Undeniably, change is in the air and the handwriting on the wall is big and black for all to see. States are making important changes in regard to promulgation of effective, fair procedures where withholding, forfeiture and restoration of good time is involved. (Burns v. Swenson (D.C.W.D.Missouri), 288 F.Supp. 4.) To its credit, it was developed at the hearing in this action that effective March 1, 1969, the New York State Department of Correction issued "Revised Procedures Covering Disciplinary Matters". Plaintiff's Ex. 8.) Such enlightened approach is heartwarming to this District Court where increasing numbers of civil rights claims of the kind here are being filed by State prisoners.

I am a firm believer that the blemishes and mistakes in the procedures of the past are best corrected from within by adoption of fair and enlightened regulations and instructions bound to withstand attack in any court, and ultimately lead to the reduction of such alleged grievances. The Governor, the Correction Commissioner and the legal advisors for the Commissioner of Correction and the Wardens are the ones to lead the way. The best legal advice is that which anticipates difficulty and counsels the corrective measures that will reduce the challenge. A good example is the statement in Wright, 387 F.2d at p. 528

by Judge Lumbard: "The Attorney General has advised us that whatever may be the truth as to the condition of solitary confinement in a strip cell in 1965 and 1966, such conditions do not now exist." Of course, the Wardens, it seems, must have autonomy and wide authority for on-the-spot decisions but no one would contend that Wardens or their deputies should be permitted to become a law unto themselves. I am aware there is at times a guarded, almost hostile, attitude toward federal court intrusion into certain aspects of State Prison affairs. That state of mind is unfortunate and the best way, I think, to dispel it is to advise the lay correction officers, whom I have found to be men of integrity and dedication, that new thinking in the law is prevalent and must be followed.

■ In this action, there is again set forth as an affirmative Second Defense: "The complaint fails to state a claim sufficient to establish the jurisdiction of this Court over the subject-matter." As I have tried to indicate, in my judgment, the defense is untenable and contrary to established law. Further, it is contended that the claim here regarding conditional release is in the same category as a parole problem. However, as so ably pointed out by the appointed attorney for the plaintiff-petitioner, there are solid and clear differences. Conditional release by express New York law is based upon computation of good behavior time and in my judgment is mandatory grant by its terms and nature if the prisoner so behaves. (See Penal Law, McKinney's Consol.Laws, c. 40, 70.-30(4) (a); 70.40(1) (b); 70.40(1) (a). The assertions for the Respondents that to me bear the implication good behavior time credit may be granted or withheld at the pleasure of the Warden and the Prison Commutation Board is answered by rulings in the New York Courts that such discretionary reductions cannot be arbitrarily withheld. (People ex rel. Stark v. Deegan (1968), 56 Misc.2d 567, 289 N.Y.S.2d 285; People ex rel. Roy v. Murphy, 36 Misc.2d 501, 233 N.Y.S.2d 282.) New York Courts have entertained these challenges, and it may be that the doctrine of temporary abstention should be applied to veer these challenges into the State Courts where I think they belong. However, and it is a bleak outlook for this 2-Judge District Court, the trend seems to the contrary. (Wright v. McMann, supra, 387 F.2d pgs. 524–525; McNeese v. Bd. of Education, 373 U.S. 668, 673–674, 83 S.Ct. 1433, 10 L.Ed.2d 622; Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed. 2d 444.) Judge Friendly in a very recent writing reviewed the great expanse in the application of civil rights remedies to myriad human problems unthought of in other days (Eisen v. Eastman, 2 Cir., 421 F.2d 560, 11/28/69). Many questions remain unsettled in these actions. In this action my decision which will be adverse to the State provides a vehicle for appeal which I invite and welcome in order that at least some of the questions persistently raised by the State may be answered as correct or incorrect.

The statutes of New York that apply to the grant or withholding of good behavior time are set forth in Section 803 of the New York Correction Law, McKinney's Consol.Laws, c. 43. Such section, subdivision 1, explicitly legislates the requirement that good behavior time credit may be withheld or revoked by the prison board for "bad behavior, violation of institutional rules or failure to perform properly in the duties or program assigned." Subdivision 3 of the Section directs the Commissioner of Correction to promulgate rules and regulations in regard to these matters and subdivision 4 says the withholding, forfeiture, cancellation or restoration of such allowances shall be final and shall not be reviewable if made in accordance with law. This subdivision emphasizes for me the right of the Commissioner to be the final authority in these matters if the law is followed and also unquestionably possessing the power to restore

the good time as the final administrative reviewing authority. In accord with Section 235 of the Correction Law there is established a Prison Commutation Board with authority to review all cases in which good time has been forfeited by the disciplinary officer and to restore or disallow any such good time revoked. By Section 236 of the Correction Law there is the provision highly important in my judgment in this situation that directs the Board where the allowance is withheld to "x forward with their report to the Commissioner of Correction their reasons in writing for such disallowance x". This direction is contained in the Miscellaneous Rules, 60.6(h), Regulations, Def.Ex. F.

In this action a hearing has been held, a satisfactory record made and transcribed. Plaintiff was sentenced in Bronx County to an indeterminate term of one and one-half to four years on February 14, 1967. The plaintiff-petitioner testified and the Head Clerk at Clinton Prison, Dannemora, New York, was the sole witness for the Respondents. There are a number of exhibits in this record that enlighten as to the inmate and employee rules, and the disciplinary and review procedures in the New York prison system. Also several exhibits have direct bearing on the incidents in which the plaintiff was involved and indicate their follow-up and aftermath through the higher echelon of the Correction officials. The plaintiff-petitioner's attack has been narrowed to 120 days good behavior time credit that was taken from him on October 31, 1968, while he was confined in Sing Sing Prison. The separate disciplinary Action reports dated October 31, 1968 (Def.Exs. A, B) charge in one possession of five contraband letters written by his wife in his cell along with other materials, and in the other having six pornographic photographs of his wife in his possession received through illegal channels. The judgment written in each instance is 60 days for a total of 120 days; the brief written comment in one report is plaintiff's refusal to disclose who had arranged to get the contraband into him, the other states he was adamant in refusal to disclose the method by which pornographic materials were passed to him.

The plaintiff's version given at the trial contradicts these disciplinary reports. He testified he was never confronted with written charges or the contraband. From the beginning, and I so find, the questioning was solely in regard to how he got the uncensored letters and photographs into Sing Sing. The punishment effected seems different from the judgment report, inasmuch as the plaintiff says the decision was merely "take him to the Box". (Tr. 29–30.) After a two or three minute oral interview when the plaintiff would not talk, he was told by the Deputy Warden simply, he testified, "I am going to take 60 days for the letters and 60 days for the pictures". (Tr. 31–33.) The following day, plaintiff testified he was then transferred to Clinton Prison at Dannemora, New York, where he was immediately put in and kept in segregation from November to December. (Tr. 36.) The plaintiff testified he was brought before Warden LaVallee several times and told in effect he was an educated man, that the Warden did not like to keep him in the Box although plaintiff did not do anything wrong at Clinton, but he had to be kept there as part of a continuing investigation. (Tr. 44.) Plaintiff testified this pattern continued and when he was brought before the Commutation Board at Clinton Prison, which Warden LaVallee headed, for a review of the forfeiture of his good behavior time, he was again asked only by the Warden if he was going to talk about how letters got into Sing Sing and when he said he had nothing to say, he was told "to get out". (Tr. 51.) The plaintiff's estimate of the time period for this reviewing board appearance was 30 seconds.

These descriptions undisputed except by the two State report Exhibits give

cause for concern that approved and short cut procedures did not permit fair hearing or proper consideration to such extent that would accord with ordinary due process requirements. Of course, it is understandable that maximum security prisons must employ subtle methods at times to insure that the security is not broken by devious schemes to get around the regulations promulgated in the interest of the safety of inmates and correctional personnel. It is also appreciated that summary and swift procedures are necessary to process the day-by-day disciplinary infractions. However, I am not sure the disciplinary officer or an officer of a review board can assume legally the investigative mantle and become prosecutor, judge and jury, and in this instance really the Appellate Court of review. It may be seriously questionable whether refusal to inform can reasonably come under the category of a violation of institutional rules when there is none to such effect. A serious fault, I find, in the reports is that more severe punishment was imposed and inflicted upon the plaintiff than is indicated by the judgment descriptions in them which merely state 60 days loss of good time in each instance.

However, the chief basis for my ruling to uphold the complaint is a complete failure by the prison commutation board to forward as legislatively directed its reasons, in writing, to the Commissioner of Correction for the disallowance of the good behavior time. This board has important responsibilities delegated to it by the New York Legislature because the forfeiture of time assessed by the disciplinary court in the first instance, usually one officer, is merely a recommendation and it is not until the inmate appears before the prison board that the time credit forfeited is actually reviewed and finally assessed

in whole or in part. A most important step therefore in these safeguards, of course, is the direction in Section 236 Correction Law that the board forward their reason, in writing, to the Commissioner when a disallowance is upheld in whole or in part. In this record, it is practically admitted that no reasons, in writing, were forwarded to the Commissioner, and I so find. (Tr. 18–20); (see also Pl.Ex. 9 for id.)

My conclusion is that the above omission is substantial and deprived the plaintiff-petitioner of due process and equal protection of the law. My findings are contained herein. My judgment declared hereby is that the disallowance of 120 days and cancellation of 120 days good behavior credit time is void and unlawful as violative of the provisions of the Fourteenth Amendment of the United States Constitution. The Commissioner of Correction of the State of New York, a named respondent, is hereby directed to restore the remaining period of good behavior time credit to the plaintiff. Such allowance will entitle the plaintiff to release forthwith. The release of the plaintiff, of course, will be to parole supervision as required under New York law. If such release is not accomplished within a reasonable time, the attorney for the plaintiff shall submit a writ of habeas corpus to effect such release. I hereby acknowledge my deep appreciation for the outstanding legal assistance given by Attorney Kohn to this Court at the hearing and by his competent and thorough briefing in this difficult and important matter. All exhibits I shall file with this decision with the Clerk of this Court.

Judgment shall enter in favor of the plaintiff granting the relief specifically outlined herein, and this decision is the judgment.

It is so ordered.