Mary Helen EDWARDS, Du Wayne Galloway, Henry Richardson, and Elizabeth Tostevin, on behalf of themselves and all persons similarly situated, Plaintiffs,

v.

Wilbur J. SCHMIDT, Secretary, State Department of Health and Social Services, State of Wisconsin, and Sanger B. Powers, Administrator, Division of Corrections, State Department of Health and Social Services, State of Wisconsin, Defendants.

No. 70-C-97.

United States District Court,
W. D. Wisconsin.

Jan. 5, 1971.

Joseph F. Preloznik, Craig E. Miller, Madison, Wis., for plaintiffs.

Jeffrey B. Bartell, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action for injunctive and declaratory relief brought on behalf of plaintiffs and all persons similarly situated. Fed.R.Civ.P. 23. Jurisdiction is claimed under 28 U.S.C. § 1343 and 42 U.S.C. § 1983. Plaintiffs are juveniles who have been adjudged delinquent and placed in the custody of the State Department of Health and Social Services by the Wisconsin juvenile courts. They challenge the constitutionality of the subsequent action of the State Department of Health and Social Services in administratively transferring them to adult correctional institutions where they are commingled with adult prisoners.

Defendants have moved to dismiss upon the grounds that (1) plaintiffs have not exhausted available state court remedies and 42 U.S.C. § 1983 may not be used in a situation appropriate to habeas corpus relief so as to circumvent the exhaustion requirements of the federal habeas corpus statutes, 28 U.S.C. § 2254, and (2) the complaint fails to state a claim upon which relief can be granted.

In addition, plaintiffs have moved for a preliminary injunction enjoining defendants from intermingling and integrating adult prisoners with juvenile delinquents and, alternatively, enjoining defendants from administratively transferring juvenile delinquents to adult prisons.

## HABEAS CORPUS OR SEC. 1983?

*The Riddle*

Federal district courts receive many petitions from state prisoners requesting judicial relief to redress some alleged deprivation of constitutional rights. Typically, prisoners do not have the assistance of counsel and the petitions are vaguely worded and inarticulate. The petitioner may characterize his prayer as a petition for a writ of habeas corpus, as a § 1983 action (with jurisdiction claimed under 28 U.S.C. § 1343(3)), as both, or he may not specify which of these types of action he seeks to bring. In the case at bar, the plaintiffs, who are represented by counsel, bring this action under 42 U.S.C. § 1983, but the defendants insist it must be treated as an application for a writ of habeas corpus.

There is a recurrent riddle which arises in such cases if we make two assumptions. There is much broad language in the cases to support each assumption. For purposes of describing the riddle I accept them as true. The assumptions are: (1) as a condition precedent to issuance of a writ of habeas corpus, a state prisoner must have exhausted all state court remedies, and (2) a person seeking relief under § 1983 need not exhaust state remedies.

It then appears that the disposition of a case brought by a prisoner who has not exhausted state court remedies will turn on whether it is characterized as an application for a writ of habeas corpus or as a § 1983 action. The district court has jurisdiction over an application for a writ of habeas corpus from a state

prisoner "in custody in violation of the Constitution \* \* \* of the United States," 28 U.S.C. § 2241(c)(3). Since any state "custody in violation of the Constitution" could be described as a "deprivation under color of \* \* \* state law, statute, ordinance, custom or usage, of [a] right \* \* \* secured by the Constitution of the United States \* \* \*," 28 U.S.C. § 1343(3), 42 U.S.C. § 1983, it also appears that any habeas application from a state prisoner could be considered a § 1983 suit. To muddy the waters further, many § 1983 requests for injunctive relief by a state prisoner could be characterized as habeas corpus actions. This is because the notion of "custody" has been extended from physical restraints to more general restraints on liberty, cf. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), and because the relief granted to a habeas petitioner can be shaped to the circumstances and need not be outright release, 28 U.S.C. § 2243 ("The court shall \* \* \* dispose of the matter as law and justice require."), see also, Developments in the Law: Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1079–1087 (1970).

For purposes of analyzing the riddle, I distinguish between two classes of prisoner suits: (1) those in which the prisoner attacks his trial or sentencing in the state courts and seeks to void the present effects on him of the state court judgment; and (2) those in which the prisoner, though lawfully in prison, is deprived by prison administrators of some right to which he considers himself constitutionally entitled even in prison, and he seeks relief from this additional deprivation of liberty. I will refer to the former as "traditional habeas suits" and to the latter as "extraordinary prisoner suits."

*The "Circumvention Rule"—Case Law*

By the "circumvention rule" I mean the rule that § 1983 may not be used in a situation appropriate to habeas corpus relief, as an alternative to habeas corpus, so as to circumvent the exhaustion requirements (28 U.S.C. § 2254) of habeas corpus. Defendants' contention here is that this action should be dismissed because the circumvention rule is controlling.

It is not surprising that the majority of cases in which this circumvention rule has been embraced have been traditional habeas suits. Gaito v. Ellenbogen, 425 F.2d 845 (3rd Cir. 1970); Bennett v. Allen, 396 F.2d 788 (9th Cir. 1968); Gaito v. Strauss, 368 F.2d 787, 788 (3rd Cir. 1966), cert. denied 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 139; Johnson v. Walker, 317 F.2d 418 (5th Cir. 1963); Smith v. Logan, 311 F.Supp. 898 (W.D.Va.1970); United States ex rel. Watson v. Commonwealth of Pennyslvania, 289 F.Supp. 797 (E.D. Pa.1968); Martin v. Roach, 280 F.Supp. 480 (S.D.N.Y.1968); Duncombe v. New York, 267 F.Supp. 103 (S.D.N.Y.1967); May v. Peyton, 268 F.Supp. 928 (W.D. Va.1967); Davis v. State of Maryland, 248 F.Supp. 951 (D.Md.1965); In re Ryan, 47 F.Supp. 1023 (E.D.Pa.1942). A few courts have gone so far as to apply the circumvention rule to suits for damages under § 1983, Still v. Nichols, 412 F.2d 778 (1st Cir. 1969); Gaito v. Strauss, *supra*; Smith v. Logan, *supra*; King v. McGinnis, 289 F.Supp. 466 (S. D.N.Y.1968); Lombardi v. Peace, 259. F.Supp. 222 (S.D.N.Y.1966). This position seems unsound and has been repudiated in Kalec v. Adamowski, 406 F.2d 536 (7th Cir. 1969) (holding, inter alia, that the trial court erred in dismissing prisoner's § 1983 suit for damages on the ground that he had not exhausted state remedies) (dismissal affirmed on other grounds). *See also*, Still v. Nichols, 412 F.2d 778, 779 (1st Cir. 1969).

In two cases combining features of both traditional habeas suits and extraordinary prisoner suits,[1] courts have

---

1. In addition to the two classes of prisoner suits discussed in the text, there may be a third: those in which a state prisoner is confined, not pursuant to a judgment of a state court, but pursuant to executive or administrative authority, and he

invoked the circumvention rule. Peinado v. Adult Authority of the Department of Corrections, 405 F.2d 1185 (9th Cir. 1969), and United States ex rel. Hunter v. Bibb, 249 F.2d 839 (7th Cir. 1957).

In *Peinado*, the state prisoner claimed a violation of constitutional rights on the grounds that: (1) in a prison disciplinary hearing, the committee refused to call two witnesses who would have exculpated him, *supra*, 405 F.2d at 1185; (2) he was denied parole because of the disciplinary charge, and the parole board disregarded his contention that the two witnesses he had desired to call would have established that he was not guilty of the charge, *id.*; and (3) the state statute under which he was sentenced was unconstitutionally vague, *id.* at 1186. Under my classification, the first two claims would be the basis of an extraordinary prisoner suit, while the latter would be a traditional habeas suit. Plaintiff sought release from custody (presumably on the basis of the third claim) and also "judicial assistance to compel the prison authorities to accord him the assertedly constitutional right to call witnesses in his own behalf at a prison disciplinary hearing, or at a hearing * * * to determine eligibility for parole." *Id.* at 1186. In affirming the district court's order of dismissal, the Court of Appeals invoked the circumvention rule. *Id.* But it would appear that it applied this rule only to plaintiff's third claim, since it separately rejected the other claims as claims under § 1983:

"This brings us to Peinado's contention that, apart from release from custody, he seeks judicial assistance in

obtaining the right to call witnesses in a prison disciplinary or Adult Authority parole eligibility proceeding.

"It has recently been held that a person on probation is entitled to legal assistance in a proceeding to revoke the probation. Mempa v. Rhay, 389 U.S. 128, 137, 88 S.Ct. 254, 19 L.Ed. 2d 336. However, we are not aware of any judicial authority for extending rights which have constitutional standing in a criminal or probation-revocation proceeding to prison disciplinary proceedings or proceedings involving eligibility for parole. In our opinion the Civil Rights Act may not be invoked to require that the right to call witnesses be extended to parole eligibility proceedings, at least in the absence of an allegation that an invidious discrimination, such as on the basis of race or religion, is being practiced. Peinado alleges no such discrimination." *Id.*

Therefore, with respect to the circumvention rule, *Peinado* fits the category of a traditional habeas suit.

United States ex rel. Hunter v. Bibb, *supra*, is difficult. The district court opinion is unreported, and the Court of Appeals tells us only that "Hunter's petition for a writ of habeas corpus was dismissed by the district court because: (1) he had not exhausted his state court remedies and, (2) of the pendency of Illinois post-conviction proceedings." *Id.* 249 F.2d at 839. The opinion continues:

"When [Hunter] appealed to this court respondent, relying on the absence of a certificate of probable cause, moved for dismissal and we

seeks total release from confinement on constitutional grounds. A number of courts have applied the circumvention rule in these situations. Still v. Nichols, 412 F.2d 778 (1st Cir. 1969) (parole revocation; after prisoner had been paroled, but before violation, parole law changed to impose heavier consequences for violation); Smartt v. Avery, 411 F.2d 408 (6th Cir. 1969) (lack of counsel at parole revocation hearing); Greene v. State of New York, 281 F.Supp. 579 (S.D.N.Y.

1967) (additions to sentence upon parole violation); Baker v. McGinnis, 286 F. Supp. 280 (S.D.N.Y.1968) (challenge, on state law grounds, to the jurisdiction of the parole board over parole revocation); Groppi v. Froehlich, 311 F.Supp. 765 (W.D.Wis.1970) (legislative contempt). For the reasons set forth later in this opinion, I believe 28 U.S.C. § 2254 does not require exhaustion of state court remedies in these cases, even if they be categorized as habeas cases.

took that motion with the case. [Citations omitted.] Subsequently we appointed counsel for Hunter who contends that the allegations in the petition prepared by Hunter exhibit cruel and inhuman treatment of this prisoner and for that reason, along with the claim of damages, should now be the basis for relief under the Civil Rights Act, 42 U.S.C.A. § 1983. But even with extreme tolerance allowed prisoners who are laymen, we cannot permit Hunter's basic petition filed below and on which the district court acted, to be converted into something other than a petition for a writ of habeas corpus. Indeed court appointed counsel vigorously opposes any view that would make the underlying papers such a petition. [Sic] Actually there are two major points in Hunter's papers: (1) the claim of brutal treatment in the Illinois State Penitentiary and (2) an assertion of deprivation of his constitutional right to counsel based on a claim that the person allegedly representing him, when he was convicted of murder in the Criminal Court of Cook County, one E. A. Simmons, was not a licensed attorney, but an imposter.

"Point 1, just stated, closely resembles United States ex rel. Atterbury v. Regan [sic], 7 Cir., 1956, 237 F.2d 953 and, would be determinative, if we countenanced conversion of the initial papers to something other than a petition for the writ. Even if the second point were properly before us under a certificate of probable cause it would be premature owing to the pendency of the Illinois post conviction proceedings." *Id.*

Among many obscurities, it is unclear whether the claim of brutal treatment had been passed upon by the district court, or was raised only on appeal based on "the underlying papers," and whether the relief sought on the claim of brutal treatment was an injunction or damages. *Atterbury*, cited by the court in the last quoted paragraph, is a damages case. *Hunter* may stand for no more than that an appellate court will not pass on issues which have not been presented below. I am unable to discern in the opinion any holding which would aid in the disposition of the present case.

I am aware of only two decisions which have rejected contentions that the circumvention rule should apply; both were extraordinary prisoner suits. Rodriguez v. McGinnis, 307 F.Supp. 627 (N.D.N.Y.1969); Hancock v. Avery, 301 F.Supp. 786, 787 (M.D.Tenn.1969). *See also,* Gaito v. Ellenbogen, *supra,* 425 F. 2d at 848–849 (dicta). In *Rodriguez,* the district judge granted injunctive relief under § 1983 and ordered good behavior credit time restored to the plaintiff. The inmate apparently had received no hearing in the ordinary sense. Instead, he was interviewed several times by officials, once by a review board, but in each instance he refused to give investigators any information. 307 F.Supp. at 631. The prisoner filed a § 1983 complaint combined with a petition for a writ of habeas corpus. The district court viewed the habeas claim as ancillary to the civil rights complaint.[2] On this basis it rejected the contention

2. "My judgment declared hereby is that the disallowance of 120 days and cancellation of 120 days good behavior credit time is void and unlawful as violative of the provisions of the Fourteenth Amendment of the United States Constitution. The Commissioner of Correction of the State of New York, a named respondent, is hereby directed to restore the remaining period of good behavior time credit to the plaintiff. Such allowance will entitle the plaintiff to release forthwith. The release of the plaintiff, of course, will be to parole supervision as required under New York law. If such release is not accomplished within a reasonable time, the attorney for the plaintiff shall submit a writ of habeas corpus to effect such release." 307 F.Supp. at 632.

that the circumvention rule should apply:

> "Specifically, in this instance, although the Assistant Attorney General tries to convert the complaint into solely a habeas corpus petition that alone, of couse, would entail the usual requirement for exhaustion of state remedies, to my mind the habeas corpus petition in the combination here is merely a proper adjunct to insure full relief if the plaintiff prevails in the dominant civil rights claim." *Id.* at 628–629.

In *Hancock*, a state prisoner, who had been placed in a "dry cell" as discipline, sought an injunction on grounds of cruel and unusual punishment. The prisoner requested relief "pursuant to 28 U.S.C. A. § 2281 et seq." 301 F.Supp. at 788. The district judge held that a three-judge court was unnecessary, construed the complaint as a § 1983 action, and granted injunctive relief. The court specifically rejected application of the circumvention rule:

> "It is important to note here, however, that the Civil Rights Act cannot be used in a situation appropriate to habeas corpus relief, as an alternative to the habeas corpus statutes, so as to circumvent the requirement of those statutes that state remedies be exhausted before federal relief is sought. Smartt v. Avery, 411 F.2d 408 (6th Cir. 1969); Johnson v. Walker, 317 F.2d 418 (5th Cir., 1963). The instant case, however, does not present a habeas corpus situation since plaintiff is not challenging the validity of his sentence with the ultimate object of obtaining release from the penitentiary. Instead, he is challenging the validity of punishments administered which are incidental to his sentence. Clearly, therefore, the instant case does not fall within the rule of Smartt v. Avery, *supra*, though it does present a cause of action under the Civil Rights Act appropriate for determination by this Court." *Id.* at 790–791.

It is tempting to place a prisoner's claim into a pigeonhole (habeas or § 1983) and then to attach the exhaustion requirements to one pigeonhole but not the other. This strikes me as excessively mechanical.[3] The underlying task is to identify the kinds of issues with re-

---

3. As an example of this approach, one might use the "total release" doctrine to avoid application of the circumvention rule. Under the total release doctrine the purpose of a writ of habeas corpus is to challenge the validity of the sentence and therefore habeas will not lie unless it would effect the petitioner's total release from confinement. Long v. Parker, 390 F.2d 816 (3rd Cir. 1968) (Black Muslim prisoner alleging religious discrimination and interference with practicing his religion); Holland v. Ciccone, 386 F.2d 825 (8th Cir. 1967) (transfer); United States ex rel. Knight v. Ragen, 337 F.2d 425 (7th Cir. 1964) (placing inmate in isolation and denying food and medical supplies) cert. denied 380 U.S. 985, 85 S.Ct. 1355, 14 L.Ed.2d 277 (1965); Price v. Johnston, 159 F.2d 234, 235 (9th Cir. 1947) (federal prisoner wanted to orally argue his own appeal) reversed on other grounds 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); Parks v. Ciccone, 281 F.Supp. 805 (W.D. Mo.1968) (access to legal materials, prison censorship, forced labor as involuntary servitude, denial of medical treatment); Fallis v. United States, 263 F. Supp. 780 (M.D.Pa.1967) (placing inmate in isolation). On the basis of this rule, one could argue that the instant case cannot be characterized as a habeas case and therefore exhaustion is not required. But this argument is legal metaphysics; none of the total release cases dealt with exhaustion of state remedies, and I can see no reason why the exhaustion requirement should turn on whether total release is sought. In addition, while the total release doctrine is not defunct, there are strong indications that it is a state of decay. *Cf.* Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L. Ed.2d 718 (1969); Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed. 2d 285 (1963); Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951); Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); United States ex rel. Westbrook v. Randolph, 259 F.2d 215 (7th Cir. 1958).

spect to which there are genuine reasons to require exhaustion of state remedies, and to require exhaustion only as to them. Therefore, I now turn directly to the exhaustion doctrine, that is, to the real purpose of § 2254 and the judge-made law which it codified.

*Exhaustion of State Remedies in Habeas Cases*

The federal habeas corpus exhaustion statute applies only to "a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254. The legislative history makes clear what the language suggests:[4] that the phrase "judgment of a State court" was chosen to cover postconviction habeas review of state trial. The original section in the House bill which became the 1948 Code required exhaustion of available state remedies by any habeas petitioner who was "in custody pursuant to the judgment of a state court or authority of a state officer." See H.R. 3214, 80th Cong., 1st Sess. § 2254 (1947). The Senate Committee on the Judiciary rewrote the section to make several changes, among them omission of the phrase: "or authority of a state officer." The Committee report explains the purpose of the change to:

"* * * eliminate from the prohibition of the section applications in behalf of prisoners in custody under authority of a State officer but whose custody has not been directed by the judgment of a State court. If the section were applied to applications by persons detained solely under authority of a State officer it would unduly hamper Federal Courts in the protection of Federal officers prosecuted for acts committed in the course of official duty." S.Rep.No.1559, 80th Cong., 2d Sess. 9 (1948).

The last quoted sentence makes clear that the specific consideration triggering the change was concern over detention of federal officers for acts done in the line of duty. But the broader purpose of the choice of language was to confine the exhaustion requirements to cases which I have characterized as traditional habeas suits.

Section 2254 was included in the Code at the instance of the Judicial Conference. Hearings on H.R. 3214 Before a Subcommittee of the Senate Committee on the Judiciary, 80th Cong., 2d Sess. 28 (1948). Chief Judge Parker, chairman of the Judicial Conference Committee which recommended the section, later described it as responsive to concerns unique to the traditional habeas suits. Parker, Limiting the Abuse of Habeas Corpus, 8 F.R.D. 171 (1949). He enumerated the following evils of federal habeas corpus jurisdiction: (1) a flood of litigation in the lower federal courts resulting from "holding out to convicted prisoners the hope of escaping punishment by making an attack on the court which has sentenced them" *id.* at 172; (2) "the unseemly spectacle of federal district courts trying the regularity of proceedings had in courts of coordinate jurisdiction and of state trial judges appearing as witnesses in defense of proceedings had in their courts," *id.* at 172–173; and (3) the unseemliness of a single federal judge being required "to review and pass upon convictions which had been affirmed by the highest state courts and which the Supreme Court of the United States had refused to review by certiorari," *id.* at 173.

Therefore, Congressional action in 1948 cannot fairly be read as reflecting any judgment relative to extraordinary prisoner suits. At most § 2254 expresses an attitude that before the handling of a criminal case by a state court sys-

4. Particularly when compared with the language of 28 U.S.C. § 2253 which provides, in pertinent part:
  "An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a state court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause."

tem is subjected to post-conviction scrutiny in a federal district court, the state court system should be accorded the opportunity to examine its own handiwork.

Beyond this legislative judgment, I find no judgemade doctrine of comity which would require exhaustion in extraordinary prisoner suits. The concern of the federal courts has been with friction between themselves and state courts in the administration of criminal law. This was explicit in Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944),[5] where the Court said:

"The denial of relief to petitioner by the federal courts and judges in this, as in a number of other cases, appears to have been on the ground that it is a principle controlling all habeas corpus petitions to the federal courts, that those courts will interfere with the administration of justice in the state courts only 'in rare cases where exceptional circumstances of peculiar urgency are shown to exist.' See In re Anderson, [9 Cir.] 117 F.2d 939, 940; In re Miller, [9 Cir.] 126 F.2d 826, 827; Kelly v. Ragen, [7 Cir.] 129 F.2d 811, 814–15; Hawk v. Olson, *supra,* [130 F.2d 910] 911–913; Marsino v. Hogsett, [1 Cir.] 37 F.2d 409, 414; United States ex rel. Foley v. Ragen, [D.C.] 52 F.Supp. 265–270; cf. United States ex rel. Murphy v. Murphy, [2 Cir.] 108 F.2d 861, 862." 321 U.S. at 117, 64 S.Ct. at 450.

Later in Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950), the Court made an extensive review of the history of the exhaustion requirement. *Id.* at 204–214, 70 S.Ct. 587, 94 L.Ed. 761. The Court grounded the doctrine on friction between state and federal courts when federal courts "upset a state court conviction":

"But, since the 1867 statute granted jurisdiction to federal courts to examine into alleged unconstitutional restraint of prisoners by state power, it created an area of potential conflict between state and federal courts. As it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, the federal courts sought a means to avoid such collisions. Solution was found in the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigant, have had an opportunity to pass upon the matter." 339 U.S. at 204, 70 S.Ct. at 590 (footnote omitted).

It appears that neither statute nor case law requires that a state prisoner exhaust state court remedies in extraordinary prisoner suits. The question remains: should exhaustion be required in these cases, nevertheless, for reasons special to these extraordinary prisoner suits. To answer this question I turn to the case law on exhaustion of state remedies in § 1983 cases generally.

§ *1983 and Exhaustion of State Remedies*

Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), is the fountainhead for the no-exhaustion rule in § 1983 cases. Monroe might have recovered in state courts because the defendants' acts were illegal under state law. *Id.* at 183, 81 S.Ct. 473, 5 L.Ed.2d 492. Nonetheless, the Court held that exhaustion of state court remedies was not required:

"It is no answer that the state has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Id.*

5. The House report on the bill which became 28 U.S.C. § 2254 said that it was declaratory of the rule exemplified by *Hawk.* H.R.Rep. No. 308, 80th Cong., 1st Sess., p. A180 (1947).

It should be noted that in § 1983 actions generally (and in extraordinary prisoner suits, however characterized) there are two types of exhaustion which might be required: judicial and administrative. (In traditional habeas suits, there is no state administrative relief even theoretically available.) Reasons may exist for requiring exhaustion of administrative but not judicial remedies.[6] On the other hand, if exhaustion of state administrative remedies is not required in a certain situation, then it seems clear that exhaustion of state judicial remedies should not be required. In fact, exhaustion of administrative remedies is often a condition precedent to review in the state courts.[7] Therefore, decisions which extend *Monroe* to eliminate a requirement of exhaustion of state administrative remedies are significant here.

In McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), the lower courts had dismissed a school segregation complaint for failure to exhaust available state administrative remedies. The Supreme Court reversed and indicated that a purpose of § 1983 was "to provide a remedy in the federal courts supplementary to any remedy any State might have." *Id.* at 672, 83 S.Ct. at 1435, 10 L.Ed.2d 622, citing Monroe v. Pape, *supra*, 365 U.S. at 183, 81 S.Ct. 473, 5 L.Ed.2d 492. But the Court also indicated that the available state relief was inadequate, *id.* 373 U.S. at 674, 83 S.Ct. 1433, 10 L.Ed.2d 622, and did not explicitly decide whether exhaustion would be required when an adequate state administrative remedy existed.

Any lingering doubts about the necessity of exhausting state administrative remedies were settled by Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L. Ed.2d 647 (1967). A three-judge court had dismissed plaintiffs' constitutional challenge to California welfare law and regulations solely on the grounds that they had failed to exhaust adequate administrative remedies. The issue was squarely before the Court and it responded unambiguously:

> "This was error. In McNeese v. Board of Education, 373 U.S. 668 [83 S.Ct. 1433, 10 L.Ed.2d 622 ], noting that one of the purposes underlying the Civil Rights Act was 'to provide a remedy in the federal courts supplementary to any remedy any State might have,' *id.*, at 672 [83 S.Ct. at 1435], we held that 'relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided [an administrative] remedy,' *id.*, at 671 [83 S.Ct. at 1435]. See Monroe v. Pape, 365 U.S. 167, 180–183 [81 S.Ct. 473, 480–482, 5 L.Ed.2d 492]." *Id.* 389 U.S. at 417, 88 S.Ct. at 526, 19 L.Ed.2d 647. Accord, King v. Smith, 392 U.S. 309, 312 n.4, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

Moreover, this non-exhaustion doctrine has been explicitly applied by the Court to prisoner suits under § 1983. Houghton v. Shafer, 392 U.S. 639, 88 S. Ct. 2119, 20 L.Ed.2d 1319 (1968) (per curiam). Houghton had brought a § 1983 action claiming that prison authorities had confiscated legal materials he had acquired for pursuing his appeal but which, in alleged violation of prison rules, were in another prisoner's possession. The District Court dismissed the complaint, solely on the ground that petitioner had not exhausted state admin-

---

6. Administrative bodies are policymaking and discretionary. Also, it is sometimes difficult to distinguish between a situation in which a final administrative decision has not yet been arrived at, and a situation in which an administrative "remedy" has not yet been exhausted.

7. State ex rel. Randolf v. Burke, No. 65/1, Wis.Sup.Ct., Feb. 5, 1965. Randolf claimed his solitary confinement amounted to cruel and unusual punishment. The Wisconsin Supreme Court responded, "Petitioner has not pursued his administrative remedies to seek redress for the complaints he has as to prison management." *Id.* at 3. This unreported opinion is discussed in Note, Wisconsin Criminal Procedure, 1966 Wis.L.Rev. 430, 514.

istrative remedies. The Supreme Court reversed:

"According to the inmates' handbook, petitioner could have taken his problem to the 'Classification and Treatment Clinic'; it was also his privilege 'to address a communication at any time to the Superintendent, the Deputy Commissioner of Correction, or the Commissioner of Correction, and as a final appeal, to the Attorney General.' Petitioner did seek relief from the Deputy Superintendent of his prison, but without result. He was told, he says, to 'leave well enough alone.' His mother's telephone calls and correspondence with prison authorities were likewise unavailing. He has not, however, taken an appeal to the Deputy Commissioner of Correction, the Commissioner, or to the Attorney General.

"As we understand the submission of the Attorney General of Pennsylvania in this Court, the rules of the prison were validly and correctly applied to petitioner; these rules are further said to be strictly enforced throughout the entire correctional system in Pennsylvania. In light of this it seems likely that to require petitioner to appeal to the Deputy Commissioner of Correction, the Commissioner, or to the Attorney General would be to demand a futile act. In any event, resort to these remedies is unnecessary in light of our decisions in Monroe v. Pape, 365 U.S. 167, 180–183 [81 S.Ct. 473, 482, 5 L.Ed.2d 492]; McNeese v. Board of Education, 373 U.S. 668, 671 [83 S.Ct. 1433, 1435, 10 L.Ed.2d 622]; and Damico v. California, 389 U.S. 416 [88 S.Ct. 526, 19 L.Ed.2d 647]." *Id.* at 640, 88 S.Ct. at 2120, 20 L.Ed.2d 1319.

█ I conclude that exhaustion of state administrative procedures is not required in prisoner suits under § 1983.

*Conclusion*

█ The instant case fits squarely into the extraordinary prisoner suit category. The plaintiffs do not challenge the validity of their adjudication as delinquents by the state courts. Their only challenge is to their transfer to adult penal institutions, which transfer was effected administratively by the State Department of Health and Social Services subsequent to the state court adjudication of delinquency. I conclude that exhaustion of state remedies is unnecessary and that plaintiffs may maintain this action under 42 U.S.C. § 1983 provided they state a claim upon which relief may be granted.

## FAILURE TO STATE A CLAIM

"[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

█ To state a cause of action under the Civil Rights Act, 42 U.S.C. § 1983, plaintiffs must allege that the defendants acted under color of state law and that they deprived plaintiffs of constitutionally protected rights, privileges, or immunities. Plaintiffs have sufficiently alleged that the acts were done under color of state law. They also allege that they were unfairly and arbitrarily transferred to adult penal institutions where they are commingled with adult prisoners; that the transfers were made without informing plaintiffs of the reasons for such action and without affording them any opportunity to show why they should not be transferred; and that these acts of defendants deprived them of due process under the Fourteenth Amendment.[8]

The minimal requirements of procedural due process may vary according to

---

8. Plaintiffs also contend that defendants' acts constitute cruel and unusual punishment under the Eighth Amendment and a denial of equal protection under the

Fourteenth Amendment. I find it unnecessary to consider these contentions at this time.

the forum which is using the procedure, and the entire context in which the proceedings are conducted.

"* * * as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding are all considerations which must be taken into account." Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960).

Since this "complexity of factors" can be illuminated only on a more complete factual record, I will not undertake to decide this difficult and important constitutional question on a motion to dismiss. "[I]t is inexpedient to determine grave constitutional questions upon a demurrer to a complaint, or upon an equivalent motion, if there is a reasonable likelihood that the production of evidence will make the answer to the questions clearer." Borden's Farm Products Co., Inc. v. Baldwin, 293 U.S. 194, 213, 55 S.Ct. 187, 193, 79 L.Ed. 281 (1934) (Stone & Cardozo, JJ., concurring). See also England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 416–417, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 460, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945); Board of Managers of Arkansas Training School for Boys at Wrightsville v. George, 377 F.2d 228, 231 (8th Cir. 1967), cert. denied 389 U.S. 845, 88 S.Ct. 105, 19 L.Ed.2d 114 (1967).

## MOTION FOR A PRELIMINARY INJUNCTION

■ In passing upon plaintiffs' request for temporary relief, the court is not adjudicating ultimate rights and a ruling on the precise issue now presented does not foreclose further consideration if this action proceeds to trial on the merits. Hunter v. Atchison, T. & S. F. Ry. Co., 188 F.2d 294 (7th Cir. 1951). But temporary injunctive relief should be granted only in cases demanding it, and the burden is upon the applicant to show a right to this relief. United States v. Borden Co., 347 U.S. 514, 74 S.Ct. 703, 98 L.Ed. 903 (1954).

■ Plaintiffs have challenged their transfers on the grounds that they were effected in such a manner as to deny them procedural due process under the Fourteenth Amendment; that incarcerating them in adult penal institutions where they are commingled with adult prisoners constitutes cruel and unusual punishment under the Eighth Amendment; and that the transfers violate the equal protection clause of the Fourteenth Amendment "in that individuals treated as adult offenders are all given a judicial determination prior to being sent to * * * the adult institutions here involved."

Earlier in this opinion, I expressed the view that plaintiffs' contentions that they have been denied due process can be determined only on the basis of a more fully developed factual record. Until that record is developed, sufficient probability of ultimate success has not been shown to justify equitable relief.

Plaintiffs claim that they are being subjected to "cruel and unusual punishment." "The exact scope of the constitutional phrase 'cruel and unusual' has not been detailed by [the Supreme] Court." Trop v. Dulles, 356 U.S. 86, 99, 78 S.Ct. 590, 597, 2 L.Ed.2d 630 (1958). I am aware of only three decisions of the court in which the clause has been employed to curtail governmental action,[9] and only in Robinson v. Califor-

---

9. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962) (criminal punishment for mere status as narcotics addict unconstitutional); Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (criminal penalty of

nia, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed. 2d 758 (1962), were five justices willing to invoke the clause. Plaintiffs have cited no other decisions. Relying solely on Robinson v. California, *supra,* they contend, by analogy, that their transfers were totally inappropriate and of such detrimental effect that they constitute "cruel and unusual punishment." Even if I were to accept a very broad reading of *Robinson,* I note that there is substantial dispute between the parties on the degree to which the transfers are detrimental to plaintiffs' welfare.[10] Until this dispute can be resolved, I am unable to conclude that the detrimental effects of the transfer are so serious that they must be categorized as "cruel and unusual punishment" in the constitutional sense. Plaintiffs have not demonstrated a sufficiently high probability of ultimate success on this contention.

Finally, plaintiffs contend that they have been denied equal protection under the Fourteenth Amendment. They argue that upon transfer to adult penal institutions they are treated in identical fashion with adults who have been convicted of a crime and sentenced to those institutions, and that therefore the equal protection clause requires that they can be transferred only if they are accorded the same procedural safeguards available to an adult when he is sentenced. But plaintiffs have not as yet established that juvenile transferees are treated in identical fashion with adult prisoners. The walls, armed guards, bars and many other aspects of their confinement are identical for these two classes of prisoners, but the present record does not reveal whether they are treated similarly with respect to other significant conditions of their confinement, for example, eligibility for release, or the means used to enforce discipline. Until a more complete factual record is presented to this court, I cannot conclude that equal protection has been denied.

I find and conclude that plaintiffs have not demonstrated sufficiently high probability of ultimate success on the merits to justify a preliminary injunction.

### ORDER

Defendants' motion to dismiss is hereby denied.

Plaintiffs' motion for a preliminary injunction is hereby denied.

expatriation per se unconstitutional); Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910) (fifteen years at hard labor in ankle chains and additional civil disabilities unconstitutional when imposed for falsification of a public record).

10. Defendants contend that the more aggressive, sophisticated, older juvenile can be provided better care, treatment and rehabilitation in the adult penal institutions. They argue that these more aggressive juveniles lack internal controls and therefore require closer supervision and tighter confinement than other juveniles in order to provide meaningful treatment and rehabilitation. Affidavit of Sanger B. Powers, filed May 5, 1970. Adult penal institutions offer vocational training in certain areas unavailable in the juvenile institutions. See Transfer of Juveniles to Adult Correctional Institutions, 1966 Wis.L.Rev. 866, 889. This is not to say that a juvenile is better off at the adult institution, but there is substantial controversy as to the harm incurred by a juvenile transferee.