Gabrielli, J. (dissenting).
The majority, in language written with an overly broad pen, has today placed upon all penal institutions including the several hundred village, city and county *64 lockups, both large and small, two burdens which will effectively retard well-accepted and necessary prison discipline. First, they have announced a cause of action for money damages against jail personnel necessitating a trial based, as it is in the case before us, upon the prisoner’s bald, unsubstantiated and factless assertion that he has been denied due process. In their view nothing further is required to cast all jail personnel in the role of defendants in civil money damage claims. Second, on the barest fact situation, as depicted by the pleadings and record in this case, they have set in motion a whole new series of hearing, court and appeal procedures that will run the gamut of our entire court structure, beginning with the formalistic hearings mandated by their decision and running through proceedings brought under CPLE article 78 in the Supreme Court to review the original determination, with the attendant appeals to the Appellate Divisions and even to the Court of Appeals; and the possible net effect of all of this could well result in the curtailment of necessary and proper penal discipline because of the threat of civil suit and attendant procedures, throughout which demands may well be made for assigned counsel and other ancillary services to aid prisoners in the disposition of their suits for money damages as well as the proceedings brought to review determinations made by custodians of all such penal institutions and lockups. In all of this, we are required to realize that in many of the places of detainment, particularly in the smaller areas, jail personnel are, limited in number, to. say the very least.
Our disagreement with the majority is not to be considered as a holding that a prisoner is not entitled to due process rights. On the contrary, we subscribe to the theory that he is no less entitled than any other person. But, to predicate possible civil liability by way of money damages against jail personnel on the less than flimsy factual claim made in this case is exalting fiction over reality. If a substantially new area of civil liability is to be fashioned out of the manner of operation of a place of detention, certain it is, it should not be created upon the record in this case. The documents before us are not pro se pleadings by any means. The case has been presented to us by experienced counsel. Appellant’s complaint sets forth two causes of action; the first assertedly arising from an alleged improper detention; *65 the second being founded on the purported censoring of his mail. Beading appellant’s pleadings and supporting papers in the most liberal light, his claim arising from his allegedly unlawful segregation from the prison populace is based upon two separate theories, (1) cruel and unusual punishment and (2) a violation of due process guarantees.
The majority correctly conclude that appellant’s cause of action resting on the Eighth Amendment’s ban against cruel and unusual punishment was properly dismissed, but they then hold that appellant ‘[1] has stated a cause of action for intentional and malicious action on the part of respondents in (1) subjecting appellant to punitive segregation for no legitimate reason [and] (2) failing to give appellant the rudimentary protections of due process ”. Certainly, the record in this case, relevant policy considerations and even precedent cannot account for or sustain the result which the majority have reached.
It has been consistently held that there is no constitutional infirmity in segregated confinement per se (Sostre v. McGinnis, 442 F. 2d 178, 192, cert. den. 404 U. S. 1049, and cases cited therein). When and to what extent procedural due process guarantees are mandated in any set of circumstances is not, of course, susceptible of easy application. However, it is generally recognized that procedural due process is required whenever an individual will be “ condemned to suffer grievous loss ” (Anti-Fascist Committee v. McGrath, 341 U. S. 123, 168 [Frankfurter, J., concurring], quoted in Morrissey v. Brewer, 408 U. S. 471, 481). Even where a “ grievous loss ” is charged, the rights of the individual must still be considered in light of its consequences. ‘ ‘ [A] s a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated -with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account.” (Hannah v. Larche, 363 U. S. 420,442.) This balancing approach was further refined and consolidated by the court in Goldberg v. Kelly (397 U. S. 254) where the Supreme Court observed that the extent of procedural due process which must be afforded *66 individuals (in that case welfare recipients) threatened by substantial losses “ depends upon whether the recipient’s interest in avoiding * * * loss outweighs the governmental interest in summary adjudication ” (Goldberg, supra, p. 263). In Sostre (p. 198) the court explicitly held that rudimentary due process would only arise in instances where “ substantial deprivations are to be visited upon a prisoner ”.
Appellant’s complaint simply alleges that he was placed in solitary confinement for a period of five days in a cell without hot water, too much heat and not enough ventilation. It must be remembered that appellant was in custody and even if the claimed facts of this case could be factually substantiated, we do not view his allegations as rising to the level of 1 ‘ substantial deprivations” evident in Sostre (where there was segregated confinement for 372 days), and other similar cases,[1] or the presence of truly severe treatment in some cases which have been viewed as constituting cruel and unusual punishment.[2]
Although speaking in terms of the Eighth Amendment, the court in Sostre noted the limitations on the judiciary and the appropriate scope of any inquiry into penal discipline and maintenance of order. Judge Kaufman there pointed out that: “ For a federal court, however, to place a punishment beyond the power of a state to impose on an inmate is a drastic interference with the state’s free political and administrative processes. It is not only that we, trained as judges, lack expertise in prison administration. Even a lifetime of study in prison administration and several advanced degrees in the field would not qualify us as a federal court to command state officials to shun a policy that they have decided is suitable because to. us the choice may seem unsound or personally repugnant *67 (Sostre v. McGinnis, 442 F. 2d 178, 191, supra.) Our scope of reviewability should not be any more extensive. With the unquestioned discipline problems in penal institutions, appellant’s confinement for a period of five days was not a “ substantial deprivation ” within the contemplation of the court in Sostre.
Recognizing our judicial limitations in these areas as well as the rights imposed by the majority upon any prisoners incarcerated in solitary confinement as against the tremendous burdens placed on municipalities by this decision, unlike the majority, we cannot conclude that procedural due process guarantees, to the extent of requiring a hearing, attach under the facts of this case. This is not to say that there are no cases involving solitary confinement where a hearing would be mandated. The purported deprivations do not rise to the level of “ grievous loss ” or “ substantial deprivations ” which in balance outweigh the governmental interest in maintenance of discipline which will be necessarily impaired if not obstructed by the blanket holding of today covering all prisoners transferred for whatever duration to solitary confinement.
Turning to the only remaining cause of action, the alleged censoring of appellant’s mail, we would find as did Special Term that this issue has been rendered moot and that there is no justiciable money damage claim spelled out. Appellant has not demonstrated any direct damages or loss which might entitle him to recovery. By his second cause of action, appellant also sought an injunction “ enjoining Defendants, their agents and employees, from prohibiting Plaintiff to correspond by mail with his attorney ”. As a consequence of his guilty plea to a felony on May 11,1972 resulting in a sentence to a State prison, appellant by his own acts has rendered moot his request for an injunction against the County of Monroe.
The order should be affirmed.
Judges Jones, Rabin and Stevens concur with Judge Wachtler; Chief Judge Breitel concurs in a separate opinion; Judge Gabrielli dissents and votes to affirm in a separate opinion in which Judge Jasen concurs.
Order modified, without costs, in accordance with opinion herein and, as so modified, affirmed.

. E.g., Ford v. Board of Managers (407 F. 2d 937) (no running water or wash bowl; bread and water diet except one regular meal each third day); Knuckles v. Prasse (302 F. Supp. 1036) (400 days segregation).

. E.g., Wright v. McMann (387 F. 2d 519, 521) (plaintiff entirely naked for 11 days; windows open throughout subfreezing night; cell encrusted with excrement; prisoner slept on concrete floor; no soap, towel or toilet paper); Hancock v. Avery (301 F. Supp. 786) (virtually no light or ventilation; hole for wastes flushed irregularly by guards; no soap, towel or toilet paper; two meals of bread, one full meal); Jordan v. Fitzharris (257 F. Supp. 674) (prisoner slept naked on concrete floor; no facilities except for bole to receive bodily wastes).